WILLIAM T. RUPERT
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone: (831) 336-9520
Fax:     (831) 336-9528
Email:  emfwtr@comcast.net

Plaintiff
Pro Se

FILED

2009 DEC 16  A 10: 24

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NO. DIST. SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM T. RUPERT,<br>An individual,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SUSAN BOND, an individual; GILE R.<br>DOWNES, ESQ., an individual; IRENE E.<br>RUPERT, an individual; SCHULTE,<br>ANDERSON, DOWNES, ARONSON &<br>BITTNER, P.C., a Professional Corporation;<br>and DOES 1 to 20,<br><br>　　　　　Defendants. | **Civil Action No.: 5:09-cv-02758 JF (RS)**<br><br>**PLAINTIFF WILLIAM T. RUPERT'S**<br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN OPPOSITION TO**<br>**DEFENDANTS' JOINT MOTION TO**<br>**DISMISS FOR LACK OF PERSONAL**<br>**JURISDICTION (FRCP 12(b)(2))**<br><br><br>Date:　January 8, 2010<br>Time:　9:00 a.m.<br>Dept:　Courtroom 3, 5th Floor<br>Judge:　Hon. Jeremy Fogel<br><br>Action Filed:　June 22, 2009 |

**TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES .     .     .     .     .     .     .     .     .     iv

I.  STATEMENT OF ISSUES TO BE DECIDED     .     .     .     .     1

    A.  Defendants' Issues #1 And #2, Concerning "General Jurisdiction",
       Are Not Disputed By The Plaintiff     .     .     .     .     .     1

    B.  Defendants' Issue #3, Regarding "Specific Jurisdiction", Is Disputed
       By The Plaintiff, Who Alleges The Allegations Of His FAC
       (For Tort Damages), Contain Sufficient Allegations Of Intentional,
       Targeted, And Knowingly Harmful Contacts With California,
       To Pass The Three-Prong *"Calder*-effects" Test     .     .     .     1

MEMORANDUM OF POINTS AND AUTHORITIES

II.  STATEMENT OF RELEVANT FACTS     .     .     .     .     .     2

    A.  The Underlying Dispute     .     .     .     .     .     .     2

    B.  The Procedural History Of This Case.     .     .     .     .     6

III.  LEGAL ARGUMENT     .     .     .     .     .     .     .     7

    A.  The Defendant's Motion Misrepresents The Applicable Law, By
       Overlooking The Fact That The Plaintiff's FAC Is A Tort Action,
       Where "Purposeful Direction" Analysis Is Appropriate, And The
       *"Calder*-effects Test Should Be Used By The Court .     .     .     7

    B.  The Defendant's Motion Also Misrepresents The Plaintiff's FAC,
       By Presenting Self-Serving Conclusionary Statements That Fly In
       The Face Of The FAC's 15 Separate Paragraphs That Detail The
       Defendants' Various Contacts Which Were Targeted At The Plaintiff
       While He Was In California, Where He Was Knowingly Harmed     .     11

        1.  Defendant SUSAN'S Telephone Calls, Emails, And Written
           Correspondences, Aimed At Plaintiff In California, From
           October Of 2008 To June Of 2009, Are Set Forth In The
           FAC's Paragraphs 23, 42, 45, 47, 55, 68, 69, 74 and 86     .     11

        2.  Some Of Defendant IRENE'S Telephone Calls And Letters,
           Aimed At Plaintiff In California, From October Of 2008 To
           June Of 2009, Are Set Forth In The FAC's Paragraphs 21
           and 78 .     .     .     .     .     .     .     .     12

i

# TABLE OF CONTENTS (Continued)

Page(s)

      3.      Defendants DOWNES and SCHULTE'S 2 Emails And 2
Written Correspondences, Aimed At Plaintiff In California,
On Behalf Of, And In Collaboration With, Defendants
SUSAN And IRENE, During June Of 2009, Are Set Forth
In The FAC's Paragraphs 80, 81, 82, And 85.   .      .      12

C.      Cases Such As <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et
L'Antisemitisme</u>, 433 F.3d 1199, 1206 (9th Cir. 2006), And <u>Dole Food
Co., Inc. v. Watts</u> 303 F.3d 1104, 1116 (9th Cir. 2002), Are Directly
On Point, And Controlling, Such That Specific Personal Jurisdiction
Should Be Found In The Northern District Of California, And The
Defendants' Motion Denied As Frivolous And Wholly Without Merit.     14

D.      The Declarations Submitted By The Defendants Do Not Address Or
Controvert The Paragraphs That Detail The Defendants' Various
Communications Which Were Targeted At The Plaintiff While He
Was In California; Nor Do They Controvert The FAC's Allegations
That Defendant IRENE Has Alzheimer's Disease, And Lacked The
Capacity To Contract, Or Execute New Estate Planning Documents .     15

E.      The Plaintiff Disputes The Defendants' Contentions That:   .      .    16

            1.      The Samuel J. Rupert Trust Is An Oregon Trust     .    16

            2.      The Samuel J. Rupert Trust Property Is In Oregon    .    17

            3.      Defendant IRENE Has Been, Or Has The Capacity
To Be, The Trustee Of The Samuel J. Rupert Trust  .    17

            4.      Defendant IRENE Has A Legitimate, Enforceable,
Attorney-Client Relationship With Defendants
DOWNES & SCHULTE    .      .      .      .    18

            5.      All Witnesses Are In Oregon Or Michigan    .      .    19

F.      Plaintiff Has Presented A Sufficient Prima Facie Case For Specific
Personal Jurisdiction In The Northern District Of California; And
The Defendants' Motion Fails To Overcome The Presumption Of,
And The Reality Of, Reasonableness, If This Tort Action Were To Be
Litigated In California, Where Plaintiff Was Targeted And Harmed.     19

*///*

ii

Plaintiff William T. Rupert's Memorandum Of Points And Authorities In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

## <u>TABLE OF CONTENTS (Continued)</u>

**Page(s)**

G.  Alternatively, Leave To Amend Should Be Granted Because The
Plaintiff Can Make Stronger Allegations Of Wrongdoing, As Shown
By The Letters He Received On 6/13/09 And 6/19/09, Which Are
Attached To The Plaintiff's Opposition Declaration As Exhibits #1-#3          25

IV.  CONCLUSION    .    .    .    .    .    .    .    .    .          25

Plaintiff  William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Boschetto v. Hansing
539 F.3d 1011, 1016  (9th Cir. 2008) .         .         .         .         .         20

Burger King Corp. v. Rudzewicz
471 U.S. 462, 478, 105 S.Ct. 2174, 2185 (1985)         .         .         .         .         9

Calder v. Jones
465 U.S. 783, 790, 104 S.Ct. 1482, 1487 (1984)         .         .         .         2,8,9,21

Caruth v. Int'l Psychoanalytical Ass'n,
59 F.3d 126, 127-28 (9th Cir. 1995) .         .         .         .         .         20

Doe v. Unocal,
248 F.3d 915, 922 (9th Cir. 2001) . .         .         .         .         .         10

Dole Food Co. v. Watts
303 F.3d 1104  (9th Cir. 2002)         .         .         .         .         . 2,8,9,14,24

Flatley v. Mauro
39 Cal.4th 299 (2006) .         .         .         .         .         .         6

Gordy  v. Daily News, L.P.
95 F.3d 829, 834 (9th Cir. 1996)         .         .         .         .         9,21

Harris Rutsky & Co., Ins. Serv. Inc. v. Bell & Clements Limited
328 F.3d 1122, 1128-29 (9th Cir. 2003)         .         .         .         .         10,24

International Shoe Co. v. Washington,
326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945)         .         .         .         20

Lewis v. Fresne
252 F.3d 352, 359 (5th Cir. 2001)         .         .         .         .         9,21

Metropolitan Life Ins. Co. v. Neaves
912 F.2d 1062, 1065  (9th Cir. 1990) .         .         .         .         .         10

Panavision Int'l L.P. v. Toeppen,
141 F.3d 1316, 1320 (9th Cir. 1998) .         .         .         .         .         20

Pebble Beach v. Caddy
453 F.3d 1151 (9th  Cir. 2006)         .         .         .         .         .         10

Plaintiff  William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction   [Case No. 5:09-cv-02758 JF (RS)]

# TABLE OF AUTHORITIES (Continued)

**Page(s)**

**Cases**

Schwarzenegger v. Fred Martin Co.,
374 F.3d 797, 800 (9th Cir. 2004).  .  .  .  .  .  .  20

Sher. v. Johnson
911 F.2d 1357, 1365 (9th Cir. 1990) .  .  .  .  .  .  20,24

Sibley v. Sup.Ct. (Carlsberg Mobile Home Properties, Ltd.-'72)
16 Cal.3d 442, 128 CR 34 (1976)  .  .  .  .  .  .  9

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme
433 F.3d 1199, 1211 (9th Cir. 2006) (en banc)  .  .  .  .  2,8,14

**Statutes**

FEDERAL RULES OF CIVIL PROCEDURE

Rule 11  .  .  .  .  .  .  .  .  10,25
Rule 12(b)(2) .  .  .  .  .  .  .  7

CIVIL LOCAL RULES FOR THE NORTHERN DISTRICT OF CALIFORNIA

Civil Local Rule 11-4(a)(4)  .  .  .  .  .  .  13,25

CALIFORNIA PENAL CODE

§ 519(1)  .  .  .  .  .  .  .  6
§ 523 .  .  .  .  .  .  .  .  6

**Other Authorities**

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
PRO. BEFORE  TRIAL (The Rutter Group 2009); Chap.3, page 58,
"[3:143] **Inconvenience alone not sufficient:**  .  .  .  24

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
PRO. BEFORE  TRIAL (The Rutter Group 2009); Chap.3, pp. 65-66
[3:168] **Acts committed *outside* forum"causing effect" within:** .  9

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
PRO. BEFORE  TRIAL (The Rutter Group 2009); Chapter 3, pages 65
[3:169] **Intentional torts:** .  .  .  .  .  .  .  9,21

v

Plaintiff  William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

## I. STATEMENT OF ISSUES TO BE DECIDED

### A. Defendants' Issues #1 And #2, Concerning "General Jurisdiction", Are Not Disputed By The Plaintiff

Plaintiff WILLIAM RUPERT ("WILLIAM"), does not dispute Defendants' Issues #1 and #2, and concedes that "general jurisdiction" over the defendants does not exist.

### B. Defendants' Issue #3, Regarding "Specific Jurisdiction", Is Disputed By The Plaintiff, Who Alleges His FAC (For Tort Damages), Contains Sufficient Allegations Of Intentional, Targeted, And Knowingly Harmful Conduct To Pass The Three-Prong *"Calder*-effects" Test

The Defendants' Motion to Dismiss includes their contention that limited, or specific, jurisdiction has not, and cannot, be shown to exist. In support of their Motion, Defendants present an incomplete legal discussion of "specific personal jurisdiction"; where they only discuss the type of "Purposeful Availment" analysis that would be appropriate *if* the instant case was a breach of contract case (which it is not). In other words, they correctly state and discuss, at length, irrelevant and inapplicable law.

The Defendants' Motion also grossly misrepresents the Plaintiff's First Amended Complaint ("FAC"), by glossing over, and igoring, the 15 separate Paragraphs that allege California forum-related contacts by Defendant SUSAN BOND ("SUSAN")[1], Defendant IRENE E. RUPERT ("IRENE")[2], Defendant GILE R. DOWNES ("DOWNES")[3], and Defendant SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER, P.C. ("SCHULTE")[4]; which were "expressly aimed" at Plaintiff in California; where he suffered substantial economic harm.

However, the Defendants' legal arguments fail to fairly or accurately present the type of

---

[1] See FAC, ¶ 23, ¶ 42, ¶ 45, ¶ 47, ¶ 55, ¶ 68, ¶ 69, ¶ 74, ¶ 80, ¶ 81, ¶ 82, ¶ 85, and ¶ 86.
[2] See FAC, ¶ 21, ¶ 78, , ¶ 80, ¶ 81, ¶ 82, and ¶ 85.
[3] See FAC,  ¶ 80, ¶ 81, ¶ 82, and ¶ 85.
[4] See FAC,  ¶ 80, ¶ 81, ¶ 82, and ¶ 85.

1

Plaintiff William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants' Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

"Purposeful Availment" analysis which the Court is required to conduct, with regards to this tort action for intentional interference with economic relations (and conspiracy to interfere). The Defendants' Motion to Dismiss neglects to ever mention or discuss the "*Calder*-effects" test from Calder v. Jones, 465 U.S. 783 (1984); and/or the "Purposeful Direction" aspect of the "Purposeful Availment" doctrine, which is appropriate to use in the instant case (where the Plaintiff alleges, inter alia, that the Defendants are conspiring to wrongfully interfere with his right to occupy the Office of the Trustee, and function as the administrator, for both his late father's irrevocable Family Trust, and also for his mother's revocable trust). (FAC, ¶ 1).

As explained in more detail later in this memorandum, the cases of Dole Food Co., Inc. v. Watts 303 F.3d 1104 (9th Cir. 2002) and Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006), are among the leading 9th Circuit Court of Appeals cases that discuss the "Purposeful Availment" doctrine, and these case (both of which Judge Fogel participated in, interestingly enough), support Plaintiff's contention that specific personal jurisdiction in California is fitting, reasonable and proper, over all Defendants.

## II.    STATEMENT OF RELEVANT FACTS

### A.    The Underlying Dispute

At its core, this case is an inheritance related, sibling rivalry squabble, between two of the three adult children of an elderly couple (Defendant SUSAN , the first born child, and Plaintiff WILLIAM, the middle child), concerning combined "family assets" of roughly $900,000.00[5],

---

[5] . The value of the "family assets" were estimated by Defendant SUSAN to be $874,995.00 (as of 3/31/09), in a financial statement she mailed to the Plaintiff, on 5/12/09, which she signed as the purported "Successor Trustee", for both trusts (FAC,¶ 68,69) . In a letter dated 6/10/09, the Defendants informed plaintiff they had, or were going to, reduce the assets of The Samuel J. Rupert Trust to less than $100,000.00. (FAC,¶ 81)(Decl. of WILLIAM, Exh. #1, page 1)

2

Plaintiff  William  T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

1    and the issue of which child should administer these "family assets", following the death of their

2    father, Samuel J. Rupert (in Oregon, on 10/12/08, at age 89), and the inability of his surviving

3    spouse, Defendant IRENE, also 89 at the time, to responsibly administer things and

4    independently manage the "family assets" (under separate Wills and separate Trusts), on her

5    own (due to Alzheimer's Disease). (FAC,¶ 1)

6         Following Samuel J. Rupert's death, no formal administration of his estate or trust has

7    commenced in any state, and no letters of administration have been issued to anyone by any state

8    (FAC,¶ 22,) .

9         Instead, there has only been the informal administration, by Defendant SUSAN, who

10   used deceit to become the administrator initially, when she falsely told Plaintiff WILLIAM, in

11   mid-October of 2008, that she had documents that trumped plaintiff WILLIAM'S  documents

12   dated 1/26/2004. (FAC,¶ 23)   However, defendant SUSAN has subsequently failed and refused

13   to produce these alleged documents (FAC,¶ 20), which the plaintiff now believes to be nothing

14   more than office store power of attorney documents, of questionable legality, that do NOT trump

15   plaintiff's 2004 documents. (FAC,¶ 20).   Plaintiff WILLIAM'S documents are legitimate estate

16   planning documents - Codicils to Wills and Amendments to Trusts, which were properly

17   witnessed and notarized by his parents' Michigan estate planning attorney at law. (FAC,¶ 13;

18   See Decl. Of WILLIAM, Exhs. #4 & #5).

19        After issues arose in late April and early May of 2009, Plaintiff WILLIAM sent a demand

20   letter to Defendant SUSAN, which demanded she produce financial records *and* her credentials

21   to be the administrator. (FAC,¶ 62, ¶70)   This letter warned her that she needed to immediately

22   relinquish control as the administrator, to plaintiff WILLIAM, if all she had were questionable

23   office store power of attorney documents.

3

1   Defendant SUSAN ignored and stonewalled all of plaintiff WILLIAM'S requests for

2   information and documents. (FAC,¶¶ 20, 98)   Defendant SUSAN then consulted with the

3   Oregon  lawyer defendants in this case, defendants DOWNES & SCHULTE, on May 20, 2009.

4   (FAC,¶ 106).

5   Instead of putting an end to her fiduciary misconduct, the lawyers conspired with

6   defendant SUSAN  to come up with a scheme to aid and abet defendant SUSAN'S fiduciary

7   misconduct. (FAC,¶¶ 110,111)   They came up with an overly ambitious, two-prong  scheme to

8   create new, or modified, estate planning documents, for _both_ trusts, that would squeeze out

9   Plaintiff WILLIAM'S inheritance interests (vested and prospective), and his right to ever be the

10   administrator; so as to permit Defendant SUSAN to wrongfully retain her role as the acting

11   trustee/administrator, and to actually increase her powers as the administrator by giving her sole

12   discretion to manage the family assets pretty much any way she wanted to, without any

13   accountability or oversight being allowed or even permitted.  (FAC,¶¶ 111,112)

14

15   The two-prong, double tort, scheme they put into motion involved the wrongful use of

16   "undue influence" against Alzheimer Disease stricken Defendant IRENE, as the first prong, to

17   cause her to suddenly claim she had been the administrator all along (not Defendant SUSAN)

18   (FAC,¶ 85), and to execute new and drastically different estate planning documents (where the

19   changes only benefited Defendant SUSAN, while weakening the interests of Defendant IRENE

20   and disinheriting Plaintiff WILLIAM). (FAC,¶ 112). The second prong of their wrongful

21   scheme involved the brazen use of fraudulent communications and "extortionate speech"

22   (FAC,¶ 106),  that amounts to prohibited "extortion" in California, as a matter of law, when the

23   defendants mailed their actionable communications to the plaintiff in California. The actionable

24   communications were designed to invoke sufficient fear of unjustified economic loss, as would

25

4

Plaintiff  William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction   [Case No. 5:09-cv-02758 JF (RS)]

force the plaintiff to consent to their proposed Modification Of Trust, for the irrevocable trust, which would have changed the irrevocable trust in very significant ways that would have been detrimental to the plaintiff's vested beneficial remainder interests (a 1/3 remainder interest in the Family Trusts' assets, which should contain around $600,000.00 of the "family assets" of $874,995.00), and his ability to ever be the administrator of the Family Trust. (FAC,¶ 80).

The Defendants' 6/10/09 letter actually commanded plaintiff to sign their proposed Modification of Trust document (for the irrevocable trust), that would have been detrimental to the plaintiff's vested remainder interests, *have it notarized in California*, and then mail it back to Oregon by June 19, 2009; or else face complete disinheritance by defendant IRENE. (FAC, ¶ 81) (See Decl. Of WILLIAM, ¶ 3 and Exhs.#1 & #2).

Rather than submit to extortion, on 7/08/09 and 7/13/09, Plaintiff WILLIAM accepted his appointments to be the first nominated child to become administrator of both trusts, when he accepted in the manner set forth in the terms of the trusts (FAC,¶ 89), by delivering copies of his Appointment documents, and copies of his Acceptance of Trust, to the acting trustee and to all income beneficiaries. (FAC,¶¶ 93,95)  Significantly, neither Defendant SUSAN or Defendant IRENE have ever bothered to take this step, which is required before an appointee can effectively become a replacement trustee and occupy the Office of the Trustee (pursuant to the terms of the trusts which are involved in this case) (FAC,¶¶ 90, 92) (See Decl. Of WILLIAM, ¶ 12, and Exh.#5, page 7, Section 12).

However, none of the Defendants have recognized or accepted Plaintiff WILLIAM's right to function as the administrator, and to occupy the Office of the Trustee, for both trusts, and to manage the "family assets". (FAC,¶ 98)  All relevant assets and financial records remain in the possession, custody or control of the Defendants, which represents continuing unreasonable

5

1   interference by the defendants, that continues to inflict damages upon the plaintiff. (FAC,¶ 98)

2   **B.    The Procedural History Of This Case**

3       The plaintiff filed his initial tort complaint on 6/22/09, shortly after receiving the

4   allegedly fraudulent communications and extortionary demand letters which Defendant

5   DOWNES drafted and mailed to the Plaintiff, in California, on behalf of all other Defendants.

6   (FAC ¶ 80, ¶ 81, ¶ 82, ¶ 85).

7       The controversies that had been simmering for 8 months, concerning Defendant

8   SUSAN'S intermeddling and secretive administration of both her mother's and her late father's

9   trust and estate assets, came to a head in June of 2009, when Defendants DOWNES &

10  SCHULTE made their contributions to the controversy by mailing fraudulent communications

11  and extortionary demand letters to the Plaintiff, in a misguided effort to coerce the Plaintiff into

12  signing a Modification of Trust document that would have eliminated his right to occupy the

13  Office of the Trustee, for his late father's trust, and which would have been detrimental to the

14  Plaintiff's vested beneficial remainder interests in the irrevocable trust of his late father.

15

16      Recognizing that the letters he received from Defendants DOWNES & SCHULTE , on

17  June 13, 2009 and June 19, 2009, were actionable, because they represented extortion, as defined

18  by California law (See Penal Code §§ 519(1) & 523, and Flatley v. Mauro (2006) 39 Cal.4th

19  299), the Plaintiff wasted no time preparing and filing his initial Complaint, on June 22, 2009.

20      Prior to service of the complaint, the Plaintiff exercised his right to amend once, as a

21  matter of course, and he filed his FAC, on 7/23/09.  In the FAC, the Plaintiff adds a declaratory

22  relief cause of action/remedy; and an additional defendant, the Plaintiff's 90 year old mother,

23  Defendant IRENE (so that all 3 of the individuals who are vying to occupy the Office of the

24  Trustee, for both of the trusts involved in this case, will be before the Court, so it will be able to

25

6

Plaintiff  William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

1    declare who, among Plaintiff WILLIAM, Defendant SUSAN and Defendant IRENE, is currently

2    entitled to occupy the Office of the Trustee, for both the irrevocable trust and the revocable trust

3    that are involved in this case).

4           In late July of 2009, waivers of service of summons were requested from all defendants,

5    but the plaintiff's request for waivers was ignored by all defendants.

6           Between 10/15/09 and 10/20/09, service of process was effected upon all defendants,

7    which included all required documents that were required to be served upon them.

8           On 11/04/09, the defendants filed their joint Motion to Dismiss for Lack of Personal

9    Jurisdiction, under FRCP Rule 12(b)(2), which they calendared for hearing on 1/08/10.

10          On 11/30/09, an ADR phone conference was conducted by Daniel Bowling, at which

11   time it was agreed to tentatively schedule another ADR phone conference for 2/4/10.

12          On 12/04/09, the initial Case Management Conference was conducted, and the Court

13   postponed making any type of CMC Order, until after the Motion to Dismiss is heard on 1/08/10.

14          Now the Plaintiff is timely filing and serving his Memorandum of Points and Authorities

15   in Opposition to Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction and the

16   Declaration of William Rupert in Opposition to Defendants' Joint Motion to Dismiss for Lack of

17   Personal Jurisdiction.  Plaintiff submits that the Motion to Dismiss lacks merit, and should be

18   denied, based upon the following factors.

19

20

21   **III.    LEGAL ARGUMENT**

22          **A.    The Defendant's Motion Misrepresents The Applicable Law, By
                    Overlooking The Fact That The Plaintiff's FAC Is A Tort Action,
23                  Where "Purposeful Direction" Analysis Is Appropriate, And The
                    "*Calder*-effects Test Should Be Used By The Court**
24

25

The Defendants' Motion to Dismiss correctly states the applicable law that should be applied by the court *if the instant case were a breach of contract action,* (which it isn't).

However, the Defendants' Motion to Dismiss fails to fairly or accurately present the type of "Purposeful Availment" analysis which is required to be conducted, with regards to this tort action for intentional interference with economic relations (and conspiracy to interfere). The Defendants' Motion neglects to mention the "*Calder*-effects" test from Calder v. Jones, 465 U.S. 783 (1984); or the "Purposeful Direction" aspect of the "Purposeful Availment" doctrine, which is the appropriate aspect to use when a tort action is involved[6], as in the instant case. Instead, they devote page after page to correctly stating irrelevant and inapplicable law.

The case of Dole Food Co., Inc. v. Watts  303 F.3d 1104, 1116 (9th Cir. 2002) and Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006), are among the leading 9th Circuit Court of Appeals cases that discuss and explain the proper application of the "Purposeful Direction" doctrine, and according to these cases (both of which Judge Fogel participated in, interestingly enough), specific personal jurisdiction in California is fitting, reasonable, and proper, as is explained in more detail throughout this Memorandum.

A leading practice guide provides the following useful discussion of the "Effect" test, when, as in the instant case, acts committed outside the forum are alleged to have caused "effects" within the forum.

---

[6] The *Dole* Court (infra),  stated the following, concerning the "*Calder*-effects" test:
    "Based on these interpretations of *Calder,* the 'effects' test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."
    Dole Food Co., Inc. v. Watts
        303 F.3d 1104, 1111 (9th Cir. 2002)

"[3:168] **Acts committed *outside* forum"causing effect" within:** If the nonresident defendant operates entirely outside the forum state, the mere fact that its acts 'cause an effect' within the state, or even that such effect was 'foreseeable,' is *not* enough by itself to support local personal jurisdiction.

Rather, the three-part test of limited jurisdiction must be met (¶3:116). i.e., it must be shown that the act was '*purposeful*', that the lawsuit *arises* from such act; and that the exercise of jurisdiction 'comports with fair play and substantial justice.' [*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478, 105 S.Ct. 2174, 2185; and see *Sibley v. Sup.Ct. (Carlsberg Mobile Home Properties, Ltd.- '72)* (1976) 16 Cal.3d 442, 128 CR 34]

(a)    [3:169] **Intentional torts:** If a nonresident, acting outside the state, intentionally causes injuries within the state, local jurisdiction is *presumptively not unreasonable*: Under such circumstances, defendant must 'reasonably anticipate' being haled into court in the forum state. [*Calder v. Jones* (1984) 465 U.S. 783, 790, 104 S.Ct. 1482, 1487; *Gordy v. Daily News, L.P.* (9th Cir. 1996) 95 F.3d 829, 834]

In such cases, ' (a) single act by a defendant can be enough to confer Personal jurisdiction if that act gives rise to the claim being asserted.' [*Lewis v. Fresne* (5th Cir. 2001) 252 F.3d 352, 359]

    1)    [3:169.1] **Requirements:** 'Purposeful availment' is satisfied where:
-- defendant committed a *wrongful intentional act*;
-- *expressly aimed* at the forum state;
-- causing harm that defendant *knew or should have known* was likely to be suffered in the forum state. [*Dole Food Co., Inc. v. Watts* (9th Cir. 2002) 303 F.3d 1104, 1111

       a)    [3:169.2] **Wrongful intentional act:** Examples of wrongful tortious acts aimed at forum residents that have subjected non-resident actors to local jurisdiction include:

--   fraudulent communications intended to induce California managers into detrimental contract arrangements. [*Dole Food Co., Inc. v. Watts*, supra, 303 F.3d at 1112"

Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2009); Chapter 3, pages 65-66

In the instant case, much like the *Dole* Case, fraudulent communications (that are alleged to be extortion under California law), which were intended to induce the California plaintiff into

9

Plaintiff William T. Rupert's Memorandum Of Points And Authorities In Opposition To Defendants' Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

detrimental contract arrangements (which would have resulted if Plaintiff would have followed

Defendants' directions and signed their proposed Modification of Trust document), are alleged.

According to the case of <u>Metropolitan Life Ins. Co. v. Neaves,</u> 912 F.2d 1062, 1065 (9th

Cir. 1990), a single fraudulent letter sent to a plaintiff in the forum state was express aiming, and

was a sufficient contact to establish specific personal jurisdiction.

In the instant case, fraudulent communications directed at Plaintiff in California, by

Defendant SUSAN are alleged in October of 2008 and January of 2009; coercive and

intimidating communications directed at Plaintiff in California, by Defendant IRENE are alleged

in June of 2009; and 2 fraudulent and extortionary letters, directed at Plaintiff in California, by

Defendants DOWNES & SCHULTE, on behalf of themselves and the other Defendants, are

alleged by the Plaintiff in his operative pleading at this time, the FAC.

Additionally, the Defendant's Motion to Dismiss fails to mention that all the Plaintiff has

to present at this stage of the case is a prima facie showing. This favorable standard, to the

Plaintiff, is explained in the following case.

> "When a defendant moves to dismiss for lack of personal jurisdiction, the
> plaintiff bears the burden of demonstrating that the court has jurisdiction over the
> defendant. *See Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clement Ltd.,* 328
> F.3d 1122, 1128-29 (9th Cir. 2003). However, this demonstration requires that the
> plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the
> motion to dismiss.' *Doe v. Unocal,* 248 F.3d 915, 922 (9th Cir. 2001) (internal
> citations omitted). Moreover, for the purpose of this demonstration, the court
> resolves all disputed facts in favor of the plaintiff, here, Pebble Beach. *Id.*"
> <u>Pebble Beach v. Caddy</u>
> 453 F.3d 1151, (9th Cir. 2006)

As will be explained in more detail below, the Defendants Motion to Dismiss lacks merit

and must be denied, as an ill-advised exhibition of sophistry skills that appear to be flirting

dangerously close with the conduct that FRCP Rule 11 is intended to inhibit and prevent.

**B.**   **The Defendant's Motion Also Misrepresents The Plaintiff's FAC, By Presenting Self-Serving Conclusionary Statements That Fly In The Face Of The FAC's 15 Separate Paragraphs That Detail The Defendants' Various Contacts Which Were Targeted At The Plaintiff While He Was In California, Where He Was Knowingly Harmed**

As will be shown below, the Defendants' Motion to Dismiss is premised upon inaccurate, self-serving, conclusionary statements such as:

"Defendants, in fact, have not had any California forum-related activities."
(See Mot. To Dismiss, p. 9, lines 27).

The above statement is clearly not accurate, reasonable, or truthful, based upon the factual allegations contained in 15 separate Paragraphs of the Plaintiff's FAC, which are set forth and discussed, in terms of each group of defendants, in the discussion that follows.

**1.**   **Defendant SUSAN'S Telephone Calls, Emails, And Written Correspondences, Aimed At Plaintiff In California, From October Of 2008 To June Of 2009, Are Set Forth In Paragraphs 23, 42, 45, 47, 55, 68, 69, 74 and 86**

The contemporaneously filed Declaration of William Rupert in Opposition to Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction contains a lengthy discussion of these California forum-related contacts, in Sections 3(A)-(H), starting on page 2, line 1 to page 4, line 9.  Each and every averment contained therein, is hereby incorporated by this reference, as though fully set forth at length herein.

Quite clearly, the plaintiff's FAC alleges defendant SUSAN had numerous California forum-related activities, from mid October of 2008 to June 20, 2009, based upon the 9 paragraphs of the FAC which the Defendants' Motion fails to ever mention or discuss.

The FAC alleges fraudulent telephone communications into California in mid October of 2008 (that harmed the Plaintiff by interfering with Plaintiff's immediate occupancy of the Office of the Trustee, for both trusts) (FAC, ¶   ); and the FAC further alleges additional fraudulent

11

Email communications into California on January 13, 2009 (FAC, ¶ ; before this smoldering

controversy erupted into flames, and got totally out of control, when the lawyer defendants got

involved, and sent their ill-advised fraudulent communications and extortionary demand letters

into California, in June of 2009, by Email and by the United States Postal Service.

Jurisdictionally sufficient contacts have been alleged by the Plaintiff, which have not

been controverted, refuted, or overcome by the Defendants, it is submitted

2. **Defendant IRENE'S Telephone Calls And Letters, Aimed At Plaintiff In California, From October Of 2008 To June Of 2009, Are Set Forth In Paragraphs 21 and 78**

The contemporaneously filed Declaration of William Rupert in Opposition to

Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction also contains a discussion

of these California forum-related contacts, in Sections 4(A)-(B), starting on page 4, line 10 to

page 4, line 22.  Each and every averment contained therein, is hereby incorporated by this

reference, as though fully set forth at length herein.

Once again, contrary to the self-serving, conclusionary statements by the Defendants,

which alleges a complete lack of "any California forum-related activities" (See Mot. To

Dismiss, p. 9, lines 27), the Plaintiff's FAC alleges Defendant IRENE had California forum-

related activities, from October of 2008 to June 5, 2009, which the Defendants' Motion fails to

ever mention or discuss, or controvert in any manner.

3. **Defendants DOWNES and SCHULTE'S Emails And Written Correspondences, Aimed At Plaintiff In California, On Behalf Of, And In Collaboration With, Defendants SUSAN And IRENE, During June Of 2009, Are Set Forth In Paragraphs 80, 81, 82, 85 And 106**

The contemporaneously filed Declaration of William Rupert in Opposition to

Defendants' Joint Motion to Dismiss for Lack of Personal Jurisdiction also includes a discussion

12

Plaintiff  William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction   [Case No. 5:09-cv-02758 JF (RS)]

of these California forum-related contacts, in Sections 5(A)-(E), starting on page 4, line 23 to page 7, line 18. Each and every averment contained therein, is hereby incorporated by this reference, as though fully set forth at length herein.

The most significant and important California forum-related activities which are alleged in the FAC are the overly ambitious damage control activities by the lawyer defendants in this case, defendants DOWNES and SCHULTE. These activities, which are alleged to have been undertaken on behalf of all named defendants, may have started in Oregon, but they were not complete until the harmful effects were felt by the plaintiff, in California, when the Plaintiff received the letters they mailed, on June 13, 2009 and June 19, 2009.

Accordingly, the Defendants' self-serving, conclusionary statement that, "Defendants, in fact, have not had any California forum-related activities." (See Mot. To Dismiss, p. 9, lines 27)., simply cannot be squared with the actual allegations of the FAC, where the defendants' forum-related activities and contacts with California are set forth in 15 separate Paragraphs (¶'s 21, 23, 42, 45, 47, 55, 68, 69, 74, 78, 80, 81, 82, 85 and 86).

It appears the Defendants' Motion to Dismiss is either an improper attempt to perpetrate a fraud on the court, or the result of the Defendants lawyers' slovenly practice of law. In either case, the Defendants' Motion to Dismiss is not well taken, or presented in good faith, and must be denied, it is submitted.

In fact, it may very well be that the Defendants' attorneys have violated NDCA Civil Local Rule 11-4((a)(4), which states:

> "**Duties and Responsibilities.** Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must:
>
> (4)  Practice with the honesty, care, and decorum required for the fair and efficient administration of justice;"

13

C.  **Cases Such As <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1206 (9th Cir. 2006), And <u>Dole Food Co., Inc. v. Watts</u> 303 F.3d 1104, 1116 (9th Cir. 2002), Are Directly On Point, And Controlling, Such That Specific Personal Jurisdiction Should Be Found In The Northern District Of California, And The Defendants' Motion Denied As Frivolous And Wholly Without Merit**

The above two cases, with which Judge Fogel is well acquainted, due to his participation

in both of them, are summarized in a leading practice guide as follows:

"[3:128.2]  French litigant's seeking to enforce a French court's orders, by service of letters and court documents on a California defendant directing it to take actions in California on threat of substantial penalty, was sufficient to subject the French litigant to personal jurisdiction in California. [*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme* (9th Cir. 2006) 433 F.3d 1199, 1211 (en banc)"
Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE  TRIAL (The Rutter Group 2009); Chapter3, page 52

"[3:169.2]  **Wrongful intentional act:**  Examples of wrongful tortious acts aimed at forum residents that have subjected non-resident actors to local jurisdiction include:

--      fraudulent  communications intended to induce California managers into detrimental contract arrangements. [*Dole Food Co., Inc. v. Watts*, supra, 303 F.3d at 1112"
Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE  TRIAL (The Rutter Group 2009); Chapter 3, page 65

Similarly, in the instant case, out of state actors are alleged to have sent fraudulent

communications into California to induce the Plaintiff into detrimental contract arrangements, on

threat of substantial penalty if their directions to take actions in California, within a matter of

only a few days, were not fully complied with by the Plaintiff.  In the instant case, the Plaintiff

only received the Defendants' extortionary demand letter on 6/13/09, but he was told that he had

to sign their testamentary document and get his signature notarized in California, and then mail it

back to Defendant DOWNES, by no later than 6/19/09, if he wanted to avoid complete

1   disinheritance by his mother, defendant IRENE, and disgrace among the family.

2       The Defendants' Motion to Dismiss must be denied, it is respectfully submitted.

3       **D.    The Declarations Submitted By The Defendants Do Not Address Or**
4       **Controvert The Paragraphs That Detail The Defendants' Various**
        **Communications Which Were Targeted At The Plaintiff While He**
5       **Was In California; Nor Do They Controvert The FAC's Allegations**
        **That Defendant IRENE Has Alzheimer's Disease, And Lacked The**
6       **Capacity To Contract, Or Execute New Estate Planning Documents**

7       As stated above, the FAC contains at least 15 paragraphs (¶'s 21, 23, 42, 45, 47, 55, 68,

8   69, 74, 78, 80, 81, 82, 85 and 86), that set forth and detail the Defendants' jurisdictionally

9   significant, forum-related activities and contacts with California, from October of 2008 to June

10  of 2009.

11      Unfortunately, the Defendants' Motion to Dismiss is based upon the false premise that,

12          "Defendants, in fact, have not had any California forum-related activities."
13                  (See Mot. To Dismiss, page 9, line 27).

14      Similarly, the supporting Declarations submitted by the individual defendants also fail to

15  controvert the FAC's 15 paragraphs that detail the Defendants forum-related activities and

16  contacts with California, from October of 2008 to June 20, 2009.

17      The Declaration of defendant SUSAN fails to mention, discuss or acknowledge any of

18  her alleged California forum-related activities which were targeted at the plaintiff.

19      Similarly, the Declaration of defendant IRENE also fails to mention, discuss or

20  acknowledge any of her alleged California forum-related activities which were targeted at the

21  plaintiff.

22

23      With regards to the Declaration of defendant DOWNES, he admits he "sent

24  correspondence to Plaintiff in California" (See Decl. Of DOWNES, p.3, line 14), without

25  addressing, discussing or denying the Plaintiff's allegations and characterizations of these

"correspondences", which are contained in the FAC's Paragraphs 80, 81, 82 and 85.

Accordingly, the Defendants' Motion to Dismiss fails to controvert the essential allegations of the FAC that detail the California forum-related activities that establish specific personal jurisdiction in this case.

Additionally, neither the Defendants' Motion to Dismiss, nor any of their supporting Declarations address, discuss, deny or controvert the FAC's allegations that defendant IRENE has Alzheimer's Disease and lacks the capacity to contract, to function as the trustee for any of the trusts, or to execute new and drastically different estate planning documents in May or June of 2009 (See FAC, ¶ 1 (page 2, lines 16-20); ¶ 5 (page 3, lines 17-19); ¶ 51 (page 25, lines 14-19); ¶ 76 (page 37, lines 19-25); ¶ 83 (page 43, lines 6-7); ¶ 84 (page 43, lines 13-17); ¶ 105 (page 54, lines 4-9); and ¶ 110 (page 57, lines 3-6).

Under these circumstances, where the significant and material allegations of the operative pleading haven't even been acknowledged, much less refuted, or overcome by the Defendants, their inaccurate, self-serving, conclusionary statements do not provide a sufficient basis for the Court to dismiss the instant action, and their bad-faith, fatuous motion should be denied.

**E.    The Plaintiff Disputes The Defendants' Contentions That:**

**1.    The Samuel J. Rupert Trust Is An Oregon Trust**

The Defendants' Statement Of Relevant Facts section, of their Memorandum of Points and Authorities in support of their Motion to Dismiss, on page 3, refers to Defendant IRENE and also makes certain contentions with regards to "the administration of her late husband's Oregon trust." (Mem. Of Pts. & Auths., page 3, line 5).

However, the contention that the now irrevocable trust of Samuel J. Rupert was, or is, an Oregon trust is absolutely disputed, and there is no justification for making this misleading

statement to the Court. In fact, the terms of The Samuel J. Rupert Trust u/a/d 11/1/95, as

amended 1/26/04, are attached to the Decl. Of WILLIAM, as Exhibit 5, and the face of this

document shows that it was created, and amended, as a Michigan Trust, by a Michigan lawyer,

for Samuel J. Rupert while he was a Michigan resident. Furthermore, Section 20 of the terms of

the trust states the following:

> "**Governing Law:** The laws of the State of Michigan shall govern the validity,
> interpretation, and administration of this trust, even though the location of the
> trust assets or the residence of me or any beneficiary may be elsewhere."
> (See Exhibit 5, page 9, Section 20, attached to Decl. of WILLIAM)

Accordingly, there is no basis in fact for the Defendants' misleading contention.

### 2. The Samuel J. Rupert Trust Property Is In Oregon

The supporting Declaration of Irene E. Rupert, on page 2, misleadingly states that,

> "All the property in my late husband's estate is located in Oregon."

The Plaintiff disputes this contention, with regards to assets which do not include any real

estate, only portable personal property (tangible and intangible), because it is inconsistent with

the Defendants' prior recitals which were contained in the proposed "Modification of Trust"

document (Exhibit 2, page 1, attached to Decl. of WILLIAM), which Defendant IRENE and the

other Defendants tried to coerce the Plaintiff into signing in June of 2009, which states, in

pertinent part:

> "The assets of the Trust consist of one or more investment accounts with
> Beacon Investment Company or Dillon and Associates, Inc. in the state of
> Michigan."
> (See Exhibit 2, page 1, Recitals, attached to Decl. of WILLIAM)

### 3. Defendant IRENE Has Been, Or Has The Capacity To Be Trustee Of The Samuel J. Rupert Trust

The Plaintiff's FAC clearly alleges that Defendant SUSAN was the acting trustee *de son*

*tort*, for both trusts and estates (See FAC, ¶ 22, page 11, lines 15-17; and FAC, ¶ 91, page 47, lines 5-9), who acknowledged she was administering "family assets" she valued at $874,995.00, as of 3/31/09, in a purported quarterly accounting she submitted to the plaintiff with a transmittal letter, dated 5/12/09, where she wrote the words "Successor Trustee" under her signature. (See FAC's ¶ 68 and ¶ 69, on pages 34-35). As such, Plaintiff asserts the alleged trusteeships of Defendant IRENE (as asserted by the Defendants in mid-June of 2009 for the first time)(See Exhibits #1-#3, attached to Decl. Of WILLIAM), are "sham" claims which have no basis in law or fact, and which are disputed by the Plaintiff.

Also, the Plaintiff's FAC refers to Defendant IRENE'S alleged incapacity to contract, or to function as a trustee, for any trusts, due to her Alzheimer's Disease condition and lack of testamentary capacity, throughout the amended pleading, in ¶ 1 (page 2, lines 16-20); in ¶ 5 (page 3, lines 17-19); in ¶ 51 (page 25, lines 14-19); in ¶ 76 (page 37, lines 19-25); in ¶ 83 (page 43, lines 6-7); in ¶ 84 (page 43, lines 13-17); in ¶ 105 (page 54, lines 4-9); and in ¶ 110 (page 57, lines 3-6). None of these allegations concerning defendant IRENE'S lack of legal capacity to contract, lack of testamentary capacity to execute new and drastically different estate planning documents, and lack of capacity to function as a trustee for any trusts, have been discussed, mentioned, acknowledged, denied or controverted in any way by the Defendants' Motion to Dismiss, or by any of the supporting declarations submitted to the Court. Accordingly, Plaintiff absolutely disputes the assertions that Defendant IRENE has been, or has the capacity to be, the trustee for her own trust or for her late husband's trust, subsequent to 10/12/08.

### 4. Defendant IRENE Has A Legitimate, Enforceable, Attorney-Client Relationship With Defendants DOWNES & SCHULTE

Plaintiff disputes the assertions that Defendant IRENE'S collaborations with Defendants

DOWNES & SCHULTE have been pursuant to a valid and legitimate attorney-client

relationship, and Plaintiff absolutely asserts that none of their actions have provided any benefit

to Defendant IRENE, whereas their actions have actually weakened, and/or attempted to weaken,

the vested interests of Defendant IRENE, when compared to her original estate plans.

### 5. All Witnesses Are In Oregon Or Michigan

The supporting Declaration of Gile R. Downes, on page 3, line 17, erroneously asserts

that, "None of the potential witnesses in this case is located in California." The Plaintiff disputes

this fatuous assertion, which is obviously not true, because the Plaintiff is located in California

and he most definitely is a potential witness. In fact, Plaintiff is the key witness in this case;

however, this case is primarily a "documents case" which will turn on the Court's interpretation

of the relevant estate planning documents in this case. Parol evidence will not be necessary, or

even admissible in this case, because the essential estate planning documents were prepared by a

competent Michigan estate planning attorney at law, and they are unambiguous. (See Exh. #4 &

#5, attached to Decl. Of WILLIAM, which show that the testamentary documents regarding the

now irrevocable trust of the late Samuel J. Rupert, are clear and unambiguous). As such, it is

anticipated this case will be ultimately resolved by way of a dispositive motion, or motions,

resolving questions of law, based upon supporting declarations and evidence submitted to the

Court, not on the basis of factual disputes that require live testimony from witnesses, at a trial.

**F.      Plaintiff Has Presented A Sufficient Prima Facie Case For Specific
          Personal Jurisdiction In The Northern District Of California, And
          The Defendants' Motion Fails To Overcome The Presumption Of,
          And The Reality Of, Reasonableness, If This Tort Case Were To Be
          Litigated In California, Where Plaintiff Was Targeted And Harmed**

As shown by the following case, the bar is set quite low for a plaintiff who encounters a

motion to dismiss for lack of personal jurisdiction as a defendant's initial response to a federal

19

Plaintiff William T. Rupert's Memorandum Of Points And Authorities In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

1  lawsuit, as in the instant case.

2      "In opposition to a defendant's motion to dismiss for lack of personal
       jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is
3      proper. *See Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir. 1990). If the district
       court decides the motion without an evidentiary hearing, which is the case here,
4      then 'the plaintiff need only make a prima facie showing of the jurisdictional
       facts.' *Id.* (citation omitted). Absent an evidentiary hearing this court 'only
5      inquire[s] into whether [the plaintiff's ] pleadings and affidavits make a prima
       facie showing of personal jurisdiction.' *Caruth v. Int'l Psychoanalytical Ass'n,* 59
6      F.3d 126, 127-28 (9th Cir. 1995). Uncontroverted allegations in the plaintiff's
       complaint must be taken as true. *See AT&T,* 94 F.3d at 588. 'Conflicts between
7      the parties over statements contained in affidavits must be resolved in the
       plaintiff's favor.' *Schwarzenegger v. Fred Martin Co.,* 374 F.3d 797, 800 (9th Cir.
8      2004).
9          When no federal statute governs personal jurisdiction, the distict colurt applies
       the law of the forum state. *See Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316,
10     1320 (9th Cir. 1998). California's long-arm statute is co-extensive with federal
       standards, so a federal court may exercise personal jurisdiction if doing so
11     comports with federal constitutional due process. *Id.* At 1320. 'For a court to
       exercise personal jurisdiction over a nonresident defendant, that defendant must
12     have at least "minimum contacts" with the relevant forum such that the exercise
       of juriswdiction "does not offend traditional notions of fair play and substantial
13     justice."' *Schwarzenegger,* 374 F.3d at 801 (quoting *International Shoe Co. v.
       Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945))."
14     Boschetto v. Hansing
15       (9th Cir. 2008) 539 F.3d 1011, 1016

16     In the instant case, no evidentiary hearing has been requested by the Defendants, or set by

17  the Court, so the favorable prima facie showing standards set forth above apply. When these

18  standards are applied to the instant case, it is clear that the Plaintiff has made a sufficient

19  showing, because: (1) the significant jurisdictional contacts by the defendants, which are alleged

20  throughout the Plaintiff's FAC, have not been controverted by them; (2) additional jurisdictional

21  factors are presented in the Plaintiff's opposition affidavit; and (3) the Plaintiff's opposition

22  papers dispute many of their key contentions, and these conflicts must be resolved in the

23  Plaintiff's favor, for purposes of this motion to dismiss.

24

25     Additionally, the Defendants' motion makes an inadequate showing of the alleged

20

Plaintiff William T. Rupert's Memorandum Of Points And Authorities In Opposition To Defendants'
Joint Motion To Dismiss For Lack Of Personal Jurisdiction   [Case No. 5:09-cv-02758 JF (RS)]

"unreasonableness" they complain about, to overcome the fact that local jurisdiction is *presumptively not unreasonable,* in the instant case, where intentional torts involving interference with economic relations, and conspiracy to interfere (through actions that are alleged to amount to fraud, breach of fiduciary duty, financial elder abuse, undue influence and extortion), are alleged by the Plaintiff[7].

For instance, the Defendants proclaim that an unreasonable burden would be placed upon them, if they had to defend in California, because the potential witnesses they have identified live mostly in Oregon, and two of them live in Michigan.

However, the Defendants have not explained how or why these potential witnesses are essential to their defense. The Defendants have completely failed to explain the "materiality" of any proposed testimony these potential witnesses might have to offer.

The Statute of Frauds, in all states, requires that estate planning documents, like the ones involved in the instant controversy, be in writing. In the instant case, all of Samuel J. Rupert's estate planning documents were put in writing by a competent Michigan estate planning attorney in 1995 and 2004. These documents are clear and unambiguous, so the Court will be required to interpret these written documents without going outside the four corners of the written documents. These documents are also before the Court, as Exhibits #4 & #5 attached to the

---

[7] (a)  [3:169]  **Intentional torts:**  If a nonresident, acting outside the state, intentionally causes injuries within the state, local jurisdiction is *presumptively not unreasonable*: Under such circumstances, defendant must 'reasonably anticipate' being haled into court in the forum state. [*Calder v. Jones* (1984) 465 U.S. 783, 790, 104 S.Ct. 1482, 1487; *Gordy v. Daily News, L.P.* (9th Cir. 1996) 95 F.3d 829, 834]

In such cases, ' (a) single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted.' [*Lewis v. Fresne* (5th Cir. 2001) 252 F.3d 352, 359]
Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2009); Chapter 3, pages 65

contemporaneously filed Declaration of William Rupert in Opposition to Defendants' Joint

Motion to Dismiss for Lack of Personal Jurisdiction. The Decl. of WILLIAM authenticates and

discusses these documents in Paragraphs 11 & 12, on pages 14-18.

Therefore, the whole issue of the locations and convenience of witnesses is a red-herring

issue. The documents prepared by Alan Price speak for themselves, so his testimony is

unnecessary. James Rupert in Michigan has no conceivable testimony that could be material and

admissible, for purposes of interpreting Samuel J. Rupert's estate planning documents.

The purpose of judicial interpretation of Samuel J. Rupert's Will and Trust will be to

determine what _he_ intended to transpire, following his death. The terms of his trust are quite

detailed and specific, in some regards, and somewhat surprising, in other regards (such as the

failure to give his wife any appointment powers over the assets of his trust, and the Family Trust

which was to be created with these assets); but they are what they are, and they are the expressed

wishes and desires of Samuel J. Rupert. His testimony is all that matters, but since he can't give

it directly anymore, the clear and unambiguous testamentary instructions and directions that he

left behind must be recognized and honored. These documents are his voice from beyond the

grave, and they are all that count, and all that the court can properly consider, it is submitted.

Accordingly, none of the named Defendants in this case have any material testimony to

offer the Court, that would be admissible, or pertinent, concerning Samuel J. Rupert's estate

plans and his now irrevocable trust.

Even with regards to Defendant IRENE'S estate planning documents, where she is

alleged to have created new and drastically different estate planning documents, and the issues

concerning her revocable trusts are considerably more fluid and complicated, they will still come

down to the Court's legal interpretation of her conflicting written testamentary documents.

22

Plaintiff  William T. Rupert's Memorandum Of Points And Authorities  In Opposition To Defendants'
Joint Motion To Dismiss For Lack of Personal Jurisdiction    [Case No. 5:09-cv-02758 JF (RS)]

The point the Plaintiff is trying to make is that this is a case which can readily be resolved by way of dispositive motions. In particular, the FAC added a declaratory relief remedy that could be fast-tracked with regards to the irrevocable trust issues, which are capable of immediate determination by the Court (without any discovery being necessary).

Even if the entire case is not settled after the irrevocable trust issues are adjudicated, the remainder of the case could still be adjudicated through another dispositive motion, once Plaintiff completed his discovery and obtained all the estate planning documents for Defendant IRENE which are currently being withheld and concealed from the Plaintiff.

In other words, this case can quite easily be adjudicated in the Northern District of California, by the Defendants who reside in Portland, Oregon. Air travel between Portland, Oregon and San Jose, California is relatively quick, convenient and economical, but for the most part this case can be adjudicated efficiently through the marvels of modern electronic communication. The Defendants' lawyers have been filing their papers electronically, and these same San Francisco lawyers (Markun Zusman & Compton, LLP), also have an office located in Portland, Oregon, in the same building where Defendant DOWNES and the Defendant SCHULTE law firm is located, at 811 Southwest Naitio Parkway, Portland, OR. Under these circumstances, the burden upon the Defendants appears to be very slight, in this case.

Additionally, it is the Defendants who have the benefit and control of the "Family Assets" that Defendant SUSAN valued at $874,995.00, as of 3/31/09, in the financial statement she sent the Plaintiff on 5/12/09 (FAC, ¶ 68, ¶ 69), which she signed as the purported "Successor Trustee". Accordingly, the Defendants have access to superior resources that make it entirely reasonable for them to bear any slightly increased litigation costs and expenses, that might be associated with adjudicating this case in California instead of Oregon.

1    Furthermore, adjudication in California would also be in keeping with the state's strong

2    interest, as shown by the following cases:

3            "California has a strong interest in providing a forum for its residents and
4            citizens who are tortiously injured. *See Panavision,* 141 F.3d at 1323."
             Dole Food Co. v. Watts
5                    303 F.3d 1104 (9th Cir. 2002)

6            "We next consider the extent of California's interest in adjudicating the suit.
             'California maintains a strong interest in providing an effective means of redress
7            for its residents [who are] tortiously injured.' *Sinatra,* 854 F.2d at 1200."
             Harris Rutsky & Co., Ins. Serv. Inc. v. Bell & Clements Limited
8                    328 F.3d 1122, 1128-29 (9th Cir. 2003)

9    Therefore, the Defendants' fatuous assertion that "California has no interest in the

10   litigation;" (See Motion to Dismiss, page 10, line 11), which is an unsupported contention for

11   obvious reasons (because it is a false statement that misrepresents the law), must be disregarded.

12   Accordingly, it is the Defendants who have not, and cannot, show any unreasonableness

13   that rises to a Constitutional dimension, by adjudicating the Plaintiff's FAC, which sounds in

14   tort, in the Northern District of California, at the San Jose Division.

15   The following discussion, from a leading practice guide, explains why this is so.

16

17           "[3:143] **Inconvenience alone not sufficient:** The mere fact local
             litigation is inconvenient (or some other forum more convenient) is not
18           enough. Litigation locally must be so gravely difficult that it puts the
             defendant to a *severe disadvantage* in comparison to his or her opponent.
19           Requiring the nonresident to defend locally is not constitutionally
             unreasonable 'in this era of fax machines and discount air travel.' [*Sher. v.*
20           *Johnson* (9th Cir. 1990) 911 F.2d 1357, 1365]"
             Schwarzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV.
21           PRO. BEFORE TRIAL (The Rutter Group 2009); Chap.3, page 58

22

23   Therefore, because the Plaintiff has passed the *"Calder-*effects" test, and met his burden

24   of proof concerning the first two-prongs of the "Purposeful Availment/Purposeful Direction"

25   test, and the Defendants have not, and cannot, overcome the presumption of reasonableness, and

the reality of reasonableness, if this tort action, were to be litigated in California, where the Plaintiff was targeted and harmed by the Defendants wrongful conspiratorial actions. The Defendants' Motion to Dismiss for Lack of Personal Jurisdiction must be denied, it is respectfully submitted.

### F. Alternatively, Leave To Amend Should Be Granted Because The Plaintiff Can Make Stronger Allegations Of Wrongdoing, As Shown By The Letters He Received On 6/13/09 And 6/19/09, Which Are Attached To The Plaintiff's Opposition Declaration As Exhibits #1-#3

Out of an abundance of caution, the Plaintiff alternatively seeks leave to file a Second Amended Complaint (if necessary to avoid dismissal), so he can strengthen his factual allegations concerning "Purposeful Availment", by adding the fact that the Defendants' directed the Plaintiff to sign their proposed "Modification of Trust" document, and *then have it notarized in California, by a California Notary Public (certified and licensed under the laws of the State of California)*, and then return it to Oregon, by June 19, 2009, or else face complete disinheritance by Defendant IRENE and disgrace within his family.

### IV. CONCLUSION

The Defendants' Motion to Dismiss must be denied, it is submitted. Additionally, the Defendants lawyers appear to have filed a frivolous motion that is so devoid of merit that they may fairly be accused of the slovenly practice of law. By maintaining this motion (instead of withdrawing it as demanded by Plaintiff), they are obstructing and impeding the orderly administration of justice, by frittering and wasting the Court's valuable and limited judicial resources, contrary to FRCP Rule 11 and Civil Local Rule. 11-4(a)(4), it is submitted.

Dated: December 13, 2009

*William Rupert*
_____
William Rupert
Plaintiff                Pro Se

**PROOF OF SERVICE BY MAIL**
William T. Rupert v. Susan Bond et al.,
Case No. 5:09-cv-02758 JF (RS)

I, the undersigned, state that I am a citizen of the United States and a resident of the County of Santa Cruz, State of California; that I am over the age of eighteen years and not a party to the above-entitled action; that my business and mailing address is P.O. Box 66403, Scotts Valley, CA 96067-6403.

On **December 15, 2009,** I served true and correct copies of the following:

**PLAINTIFF WILLIAM RUPERT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

on the persons and/or entities listed below, by placing said copies enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Post Office at Santa Cruz, California, addressed as follows:

LONG & LEVIT LLP
ATTN: JESSICA R. MACGREGOR
465 California Street, Suite 500
San Francisco, CA 94104

MARKUN ZUSMAN & COMPTON, LLP
ATTN: KEVIN K. ENG
465 California Street, Suite 500
San Francisco, CA 94104

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 15th Day of December, 2009, at Ben Lomond, California.

Carol Slater

Carol Slater