WILLIAM T. RUPERT
P.O. Box 66403
Scotts Valley, CA 95067-6403
Phone: (831) 336-9520
Fax:     (831) 336-9528
Email: emfwtr@comcast.net

Plaintiff
Pro Se

FILED

2009 DEC 16  A 10: 24

RICHARD W. WIEKING
CLERK'S DISTRICT COURT
N.D. OF CAL. SAN JOSE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM T. RUPERT,<br>An individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>SUSAN BOND, an individual; GILE R.<br>DOWNES, ESQ., an individual; IRENE E.<br>RUPERT, an individual; SCHULTE,<br>ANDERSON, DOWNES, ARONSON &<br>BITTNER, P.C., a Professional Corporation;<br>and DOES 1 to 20,<br><br>    Defendants. | **Civil Action No.: 5:09-cv-02758 JF (RS)**<br><br>**DECLARATION OF WILLIAM RUPERT<br>IN OPPOSITION TO DEFENDANTS'<br>JOINT MOTION TO DISMISS FOR<br>LACK OF PERSONAL JURISDICTION;<br>& EXHIBITS #1-#5**<br><br>Date:   January 8, 2010<br>Time:   9:00 a.m.<br>Dept:   Courtroom 3, 5th Floor<br>Judge:  Hon. Jeremy Fogel<br><br>Action Filed:  June 22, 2009 |

I, WILLIAM T. RUPERT, hereby declare as follows:

1.      I am a party, the plaintiff, in the above entitled action.

2.      I submit this declaration in opposition to the Defendants' joint Motion to Dismiss

for Lack of Personal Jurisdiction, and in support of my First Amended Complaint ("FAC").

3.      The FAC contains a total of 15 separate paragraphs that allege the California

forum-related contacts of the three individually named Defendants in this case.  There are 9

separate paragraphs that allege the individual California forum-related contacts by Defendant

SUSAN; another 2 separate paragraphs that allege the individual California forum-related

contacts of Defendant IRENE; and another 4 separate paragraphs that allege the individual, and

representative, contacts by the lawyer Defendants DOWNES & SCHULTE.  Defendant

SUSAN'S individual contacts, as alleged in the FAC, are as follows:

3(A).    The FAC's ¶ 23, on pages 11-12, alleges a telephone conversation

between Defendant SUSAN and Plaintiff WILLIAM, in mid October of 2008, while she was in

Oregon and he was in California, wherein she told plaintiff that: (1) she had credentials to be the

administrator/trustee that trumped the Plaintiffs credentials from 1/26/04; and (2) all of Samuel J.

Rupert's assets automatically passed to Defendant IRENE, as the surviving spouse.

3(B).    The FAC's ¶ 42, on page 22, alleges an email was sent by Defendant

SUSAN, from Oregon, to Plaintiff WILLIAM, in California, on 1/13/2009, wherein Defendant

SUSAN sought his social security number, as a beneficiary, so she could take care of some loose

ends concerning the trusts she was administering as the acting trustee.

3(C).    The FAC's ¶ 45, on page 23, alleges another email was sent by Defendant

SUSAN, from Oregon, to Plaintiff WILLIAM, in California, on 1/13/2009, wherein Defendant

SUSAN failed to correct Plaintiff WILLIAM'S erroneous belief (which she created and caused

him to believe, by the incomplete estate planning documents she chose to show the Plaintiff,

when he was in Portland, Oregon on January 12, 2009), that their parents' estate planning

documents were inconsistent and designated different administrators/trustees in the will and trust

documents.

3(D).    The FAC's ¶ 47, on page 23, alleges another email was sent by Defendant

SUSAN, from Oregon, to Plaintiff WILLIAM, in California, on 1/17/2009, wherein Defendant

SUSAN informed Plaintiff WILLIAM that she was transferring assets into Defendant IRENE's

trust, and that she was "now working on getting the funds from Dad's life insurance included."

3(E).    The FAC's ¶ 55, on pages 26-27, alleges a telephone conversation

between Defendant SUSAN and Plaintiff WILLIAM, on April 30, 2009, while she was in

Oregon and he was in California, wherein her fiduciary responsibility to prepare and submit

quarterly accounts to all the income beneficiaries was pointed out to her by Plaintiff WILLIAM,

but she failed and refused to agree to provide a full and complete accounting of her

administration, which began on October 12, 2008.

3(F).    The FAC's ¶ 68 and ¶ 69, on pages 34-35, alleges Defendant SUSAN

mailed a transmittal letter and a purported quarterly accounting to Plaintiff WILLIAM, which he

received in California on May 16, 2009, which was signed by Defendant SUSAN, who wrote the

words "Successor Trustee", under her signature.  The financial statement purported to show she

was administering combined "family assets" of $874,995.00 (valued as on 3/31/09).

3(G).    The FAC's ¶ 74, on page 36, alleges a telephone conversation between

Defendant SUSAN and Plaintiff WILLIAM, on May 20, 2009, which she initiated to tell the

plaintiff that she and Defendant IRENE had retained an attorney, who would be reviewing her

paperwork and the Plaintiffs numerous letters seeking information.  Defendant SUSAN is further

alleged to have stated that this unnamed attorney would be responding to the Plaintiff's demands

for information (about the trusts' assets and administration), and also for Defendant SUSAN'S

credentials to be the administrator of the "family assets" (instead of the Plaintiff).

3(H).    The FAC's ¶ 86, on page 45, alleges Defendant SUSAN, from Oregon,

mailed additional portions of some of the estate planning documents she had in her possession, to

3

Declaration Of William Rupert In Opposition To Defendants' Joint Motion To Dismiss
For Lack Of Personal Jurisdiction; Exhibits #1-#5   [Case No. 5:09-cv-02758 JF (RS)]

1   Plaintiff WILLIAM, in California, which were received on June 20, 2009.  It is further alleged

2   that Defendant SUSAN failed and refused to provide any listing of the specific assets that

3   belonged to the trusts she was administering as the acting trustee.

4        4.    The FAC also contains 2 separate paragraphs that allege the individual California

5   forum-related contacts of Defendant IRENE, as outlined and discussed below:

6        4(A).   The FAC's ¶ 21, on page 11, alleges a telephone conversation between

7   Defendant IRENE and Plaintiff WILLIAM, shortly before Samuel J. Rupert died on October 12,

8   2008, wherein Defendant IRENE asked Plaintiff WILLIAM to stay in California, and not travel

9   up to Portland, Oregon, until the Memorial Service was held for Samuel J. Rupert, 15 days after

10   his death. This strange request by Defendant IRENE set the stage for Defendant SUSAN'S

11   intermeddling and improper assumption of the role of acting trustee for both trusts.

12        4(B).   The FAC's ¶ 78, on pages 38-39, also alleges Defendant IRENE mailed

13   her own threatening letter, from Oregon, to Plaintiff WILLIAM, in California, which was

14   received on June 5, 2009, wherein she instructed the Plaintiff, "to stop all these letters etc. or else

15   I will take you out of my will."

16        5.    The FAC contains 4 separate paragraphs that allege the individual and

17   representative California forum-related contacts of Defendants DOWNES & SCHULTE, , as

18   outlined below:

19        5(A).   In pertinent part, ¶ 80 of the FAC, on pages 40-41, states the following:

20

21       "In this surprising letter, defendant DOWNES boldly and brashly informed
plaintiff RUPERT, that: (1) his prospective inheritance rights had been

22       substantially reduced, and he had been replaced as successor trustee of all trusts
(the monetary reduction was by at least the amount of defendant DOWNES'S

23       legal fees, and expenses, for drastically changing the estate plans of defendant

24       IRENE, his purported new client, to keep defendant SUSAN in power as the
successor trustee, and to allow her to suppress and conceal the results of her

25

Declaration Of William Rupert In Opposition To Defendants' Joint Motion To Dismiss
For Lack Of Personal Jurisdiction; Exhibits #1-#5    [Case No. 5:09-cv-02758 JF (RS)]

illegitimate administration of the trusts of Samuel J. Rupert and defendant
IRENE, as the acting trustee *de son tort,* subsequent to the death of Samuel J.
Rupert on October 12, 2009); (2) his prospective inheritance rights could and
would be further reduced if he persisted in writing letters and seeking information
about the assets and administration of the trusts of Samuel J. Rupert and
defendant IRENE ; and (3) **his prospective inheritance rights would most likely
be completely eliminated unless plaintiff WILLIAM signed an enclosed
Modification Of Trust  agreement (ORS § 130.200(2)), concerning the
Samuel J. Rupert Trust[1], and returned it to defendant DOWNES in the
enclosed stamped, self-addressed envelope, by June 19, 2009."**
    (FAC, ¶ 80, p. 40, line 22 to p. 41, line 11) (bold emphasis added)

5(B).    The FAC's  ¶ 81, on page 41, further alleges that this first letter from

Defendants DOWNES & SCHULTE included a statement to the effect that,

    "Your mother's trust will have substantially all the family assets in it, except for
    less than $100,000, which is in your father's trust."
        (FAC, ¶ 81, p. 41, lines 12-14)

5(C).    The FAC's  ¶ 81, on page 41, additionally alleges that the Family Trust

should have had much more than $100,000.00 in assets, due to the following matters:

    "However, Samuel J. Rupert intended all his assets to be allocated to The
    Samuel J. Rupert Family Trust, and the terms of his trust do not provide for the
    wholesale transfer of his estate or trust assets to defendant IRENE'S trust or
    estate".    (FAC, ¶ 81, p. 41, lines 14-16)

5(D).    The FAC's ¶ 82, on page 42, alleges the letter which was received by

Plaintiff WILLIAM, on June 13, 2009 was a wrongful and fraudulent communication, which

---

[1] Whereby defendant SUSAN was named the new successor trustee (retroactive to June 9, 2009),
and relieved of the responsibility to pay the net income to defendant IRENE , and relieved of the
duty to comply with the standard of support Samuel J. Rupert set forth in the terms of his trust
(for his wife and children), while plaintiff WILLIAM  went from being the first nominated child
to be the successor trustee (after defendant IRENE), to a person who would never, ever, under
any circumstances, have the opportunity to be the successor trustee of the Samuel J. Rupert
Trust.  Defendant SUSAN'S children (Christopher and Patrick) were even mentioned as
potential successor trustees, in the proposed consent modification agreement, but the language
concerning plaintiff RUPERT was the following:
        "Under no circumstances shall William Rupert be trustee".

caused him harm when he received it in California, as shown by the following assertions and

contentions:

"The June 10, 2009 letter from defendant DOWNES, was essentially a confession that he had, and was, conspiring with defendant SUSAN, to take advantage of defendant IRENE , through use of improper means (utilizing defendant SUSAN'S confidential relationship, dominance, and undue influence, and taking advantage of defendant IRENE'S Alzheimer's Disease), for the improper purposes of: (1) removing plaintiff WILLIAM as the first nominated successor trustee, without cause or justification; (2) for the improper purpose of allowing defendant SUSAN to suppress and conceal the results of her illegitimate administration as the acting trustee/executor *de son tort,* for both her parents trusts; (3) for the improper purpose of drastically changing defendant IRENE'S estate plans to add draconian in terrorem, or no contest clauses, that can be triggered by any criticism of the administration of the trust by defendant SUSAN, regardless of the wrongdoing, or misconduct, that can be shown; (4) for the improper purpose of rewarding defendant SUSAN for her misconduct and fraudulent behavior, and insulating her performance from any meaningful review by any of the other interested trust beneficiaries (and/or qualified beneficiaries); (5) for the improper purpose of looting and plundering the assets that were supposed to be allocated to The Samuel J. Rupert Family Trust; and, (6) for the improper purpose of punishing plaintiff WILLIAM financially, without justification or any reasonable basis for the punishment, by interfering with his economic relations and prospective inheritance, as set forth in the legitimate estate planning documents of Samuel J. Rupert and defendant IRENE, from 1995 and 2004 (who prior to the intentional interference by defendants SUSAN, DOWNES and SCHULTE, had a prospective inheritance share of $291,665.00, plus the compensation he could have received for functioning as the successor trustee, of both of his parents trusts, which would entitle him to be compensated as if he was a corporate fiduciary who was administering $874,995.00 in trust assets)."

(FAC, ¶ 82, p. 42, lines 1-24)

5(E).    In pertinent part, the FAC's ¶ 85 states the following, with regard to the

second letter (dated 6/19/09, See Exhibit #3, attached hereto), which was drafted by Defendant

DOWNES, and mailed to Plaintiff in California, on behalf of all other named Defendants in this

cases:

"The second letter was addressed to plaintiff RUPERT, and it falsely stated the following: (1) Defendant IRENE was the trustee of The Samuel J. Rupert Trust (but not of her own Trust); (2) the accounting provisions mentioned by plaintiff WILLIAM only applied to The Samuel J. Rupert Trust; and, (3) plaintiff

WILLIAM was not entitled to any reports or accounts because he was not an "income beneficiary". After making these blatantly false statements of law and fact, defendant DOWNES advised plaintiff WILLIAM he wasn't going to get any useful information from Alan E. Price, and to just sign the Modification of Trust document and return it to defendant DOWNES without further delay, because the Sword of Damocles was still over plaintiff WILLIAM'S head, poised to completely eliminate his prospective inheritance of $291,665.00. Plaintiff RUPERT was further reminded that he was not to discuss any aspects of defendant IRENE'S estate plans or financial affairs with her, but he was free to contact her and discuss any other subjects, as long as it didn't concern the new estate plans that were designed by the defendants, and each of them, to punish plaintiff WILLIAM for correctly pointing out that he was the child who was supposed to be administering the affairs of Samuel J. Rupert, Deceased, and Irene E. Rupert, as their successor trustee, not defendant SUSAN (with only her office store power of attorney documents, her void *ab initio* Trust Amendment dated January 12, 2009, and most recently, the invalid estate planning modifications she procured on or about June 10, 2009, in conspiracy with defendant DOWNES and defendant SCHULTE - who aided and abetted her fiduciary wrongdoing while furthering and enhancing her tortious conduct that amounts to financial elder abuse against defendant IRENE, as well as continuing fiduciary breaches of the terms of the trust, the provisions of the Oregon Uniform Trust Code (ORS Chapter 130), and the Michigan Estates and Protected Individuals Code, by defendant SUSAN)."

(FAC, ¶ 85, p. 44, line 2 to page 45, line 9)

6.    The Plaintiff's FAC clearly alleges that Defendant SUSAN was the acting trustee *de son tort*, for both trusts and estates, beginning on 10/12/08 (See FAC, ¶ 22, page 11, lines 15-17; and FAC, ¶ 91, page 47, lines 5-9), who is further alleged to have acknowledged she was administering combined "family assets" which she valued at $874,995.00, as of 3/31/09, in a purported quarterly accounting she submitted to the plaintiff with a transmittal letter, dated 5/12/09, where she wrote the words "Successor Trustee", beneath her signature. (See FAC, ¶ 68 and ¶ 69, on pages 34-35).

7.    The Plaintiff's FAC refers to Defendant IRENE'S incapacity to contract, or to function as a trustee, or to execute new testamentary documents, allegedly due to her Alzheimer's Disease condition and lack of testamentary capacity, throughout the amended

1  pleading, in ¶ 1 (page 2, lines 16-20); in ¶ 5 (page 3, lines 17-19); in ¶ 51 (page 25, lines 14-19);

2  in ¶ 76 (page 37, lines 19-25); in ¶ 83 (page 43, lines 6-7); in ¶ 84 (page 43, lines 13-17); in ¶

3  105 (page 54, lines 4-9); and in ¶ 110 (page 57, lines 3-6).

4       8.     Exhibit 1, attached hereto, is a true and correct copy of the letter, dated June 10,

5  2009, which Plaintiff received from the Defendants, and all of them, on June 13, 2009, which is

6  discussed in more detail within the allegations of Paragraphs 80-82 of the FAC, on pages 40-42.

7  Enclosed with the demand letter was a consent form Plaintiff was directed to sign, and have

8  notarized, and then return to Oregon by no later than June 19, 2009, or else risk complete

9  disinheritance by Defendant IRENE. This letter also asserted that it was Defendant IRENE who

10  was, and always had been, the replacement trustee for The Samuel J. Rupert Trust.  Additional

11  assertions were that "substantially all the family assets" were going to be, or had been,

12  transferred into the Irene E. Rupert Trust, such that The Samuel J. Rupert Trust was going to be

13  left with less than $100,000.00 in assets.  This letter includes the following significant

14  statements, in pertinent part:

15

16       "Dear Mr. Rupert:
                I represent your mother Irene E. Rupert.  She has asked me to respond in
17  her behalf to your recent letters to her or to your sister, Susan Bond.        .

18       .      .      .      .      .      .      .      .      .      .      .
                To the extent they ever had any merit, a lot of your contentions are moot.
19       .      .      .      .      .      .      .      .      .      .      .
                Your mother wants you to stop attacking your sister Susan Bond, . . . . She
20  wants you to stop making your allegations, accusations and demands.  She wants
    your sister to take over as trustee of your mother's trust and, in the event your
21  sister is unable or unwilling to perform that function in the future, she wants
    your brother James in Michigan to perform that function.  Your mother's trust
22  will have substantially all the family assets in it, except for less than $100,000,
    which is in your father's trust.
23              To accomplish your mother's objectives and to encourage you to
    terminate your demands and attacks, your mother has done the following,
24  among other things:
    1.      She has amended her trust to name your sister Susan Bond as trustee of
25

her trust, and your brother James Rupert as successor trustee.

2. She has amended her trust to reduce your share of it by the legal and other expenses incurred in dealing with your past allegations, accusations and demands and in revising her estate plan, and to reduce your share further by the amount of any expenses incurred in dealing with any future demands and accusations you make.

3. She has amended her trust so that if, in the future, you attack or accuse your mother, your sister or your brother, or your mother's plan, you will be disinherited entirely as a beneficiary of your mother's estate and trust.

.    .    .    .    .    .    .    .    .    .

I will turn now to the trust created by your father, Samuel J. Rupert.
.    .    .    .    Your mother would prefer that your sister Susan Bond assume the duties of trustee of your father's trust and, in the event she becomes unable or unwilling to do so, that your brother James Rupert assume those duties. That can be arranged for by written agreement among your mother, your brother, your sister, you and other living contingent beneficiaries. I am enclosing such an agreement with a postage paid, self-addressed return envelope. Your mother has requested that I solicit your consent to this. I request that you send me this document signed and acknowledged by you so that I have it no later than Friday, June 19, 2009. **If I do not have this document signed and acknowledged before a notary by you by that date, I expect that your mother will be asking me about two things: (a) additional documents for her to eliminate whatever inheritance rights from her you might otherwise have; and (b) pursuing her objectives with respect to your father's trust, in court.**
Sincerely,
Schulte, Anderson, Downes, Aronson, & Bittner, P.C.
Gile R. Downes"
(See Exhibit 1, attached hereto, pages 1-2)    (bold emphasis added)

9. Exhibit 2, attached hereto, is a true and correct copy of the consent form which was enclosed with the Exhibit 1 letter described above, which Plaintiff was instructed to sign, have notarized in California, and then mail back to Oregon. This consent form is entitled as a "MODIFICATION OF TRUST" document, and purports to be pursuant to Oregon Revised Statute ("ORS") 130.200(2). The document is significant because it shows that the Defendants directed the Plaintiff to have his signature notarized in California by a California Notary Public, as the Modification Of Trust agreement, on page 3, contains the notation "Notary Public for California", and space for such a California notary to sign the acknowledgment.

10.    Exhibit 3, attached hereto, is a true and correct copy of the second letter (dated

6/19/09), which was drafted by Defendant DOWNES, and mailed to Plaintiff in California, on

behalf of all other named Defendants in this cases. (FAC, ¶ 85).  Significantly, this second letter

once again directed the Plaintiff to sign their proposed Modification of Trust document, and

return it to Oregon right away, under threat of financial harm and family disgrace, as it states the

following, in pertinent part:

> "Again, your mother wants you to stop asking questions and making
> accusations.  You can certainly have your own opinions regarding these matters,
> but she wants you to keep them to yourself, and she is hoping that you will
> recognize that **there is nothing to be gained and a lot to be lost by you both
> financially and probably more important, in terms of your family
> relationship, if you continue to pursue these matters.**
> I respectfully suggest that you get your own independent legal counsel, stop
> trying to be your own lawyer, **sign and return the document I sent you,** and
> consider calling your mother and discussing with her something pleasant, but not
> her financial affairs or matters relating to the trust your father created."
> (See Exhibit 3, pages 2-3) (bold emphasis added)

11.    Exhibit 4, attached hereto, is a true and correct copy of the version of the Will of

Samuel J. Rupert, u/a/d November 1, 1995, and the Codicil to Will, dated 1/26/04, which was

provided to the plaintiff by defendant SUSAN on 6/20/09 (See FAC, ¶ 86).  The Plaintiff is

submitting this estate planning document to show that the relevant documents in this case are

clear and unambiguous, such that extrinsic evidence (parol or otherwise), will not be necessary,

or even admissible, to aid the Court in interpreting the estate planning documents (to determine

the governing law, the identity of the individual who is entitled to occupy the Office of the

Trustee, and the Trustee's transfer powers).  Significantly, this pour-over Will contains the

following 2 original provisions, as well as a Codicil to Will of Samuel J. Rupert, dated 1/26/04,

where the following pertinent matters are set forth:

11(A).                          **"Section 3**

**Distribution of Remainder of Estate:** I give the remainder of my estate
to the Trustee then acting under a Declaration of Trust executed by me
today, to be administered and distributed upon the terms of that
Agreement as it now exists or is later amended."
      (Exhibit 4, attached hereto, page 1)

11(B).                          **"Section 6**

**Governing Law:** The laws of the State of Michigan shall govern the
validity, interpretation, and administration of this Will, even though the
location of any estate or trust property or the residence of any beneficiary
may be elsewhere."
      (Exhibit 4, attached hereto, page 2)

11(C).          **"Codicil to Will of Samuel J. Rupert (dated 1/26/04)**

"I, SAMUEL J. RUPERT, of Washtenaw County, Michigan, make this
the first codicil to the Will executed by me on November 1, 1995.

1.    I nominate my wife, IRENE E. RUPERT, as my Personal
Representative. If she does not survive me, is incapacitated, or
declines appointment, I nominate as Personal Representative the
first one of the following persons, in the order named, who is able
and willing to act: WILLIAM RUPERT; SUSAN RUPERT
BOND; or JAMES RUPERT.

2.    In all other respects, I ratify and confirm the provisions of my
Will. . . . . ."
      (Exhibit 4, attached hereto, page 3)

12.    Exhibit 5, attached hereto, is a true and correct copy of the version of The Samuel

J. Rupert Trust, u/a/d November 1, 1995, as Amended 1/26/04, which was provided to the

plaintiff by defendant SUSAN on 6/20/09 (See FAC, ¶ 86). This document contains the

complete terms of the trust, and the amendment of 1/26/04, but the all important Exhibit A,

where the assets of the trust are supposed to be listed, is blank (See Exhibit 5, attached hereto,

page 13). The Plaintiff is submitting this estate planning document to show that the terms of the

trust are set forth in a manner that is clear and unambiguous, such that extrinsic evidence (parol

or otherwise), will not be necessary, or even admissible, to aid the Court in interpreting the estate

1  planning documents (to determine the governing law, the identity of the individual who is

2  entitled to occupy the Office of the Trustee, and the Trustee's transfer powers, if any).  Among

3  the noteworthy features of this Trust, no powers of appointment, over any of the Trust assets is

4  granted by Samuel J. Rupert, to anyone, not even his wife.  Additionally, the terms of the trust,

5  and the trust amendment of 1/26/04, include the following provisions, in pertinent part:

6

7  12(A).                    **"Section 4**
   **Trust Assets:**  I may transfer assets to myself as Trustee of this trust, and
8  Designate the Trustee as beneficiary under a will, insurance policy, or
   other agreement.  Other persons may add to the trust assets which are
9  acceptable to the Trustee.  When assets are transferred to the trust, they
   shall be described in Schedule A."
10                     (Exhibit 5, attached hereto, page 3)

11

12  12 (B).                    **"Section 8**
    B.  **Distribution if Wife Survives:**  After my death, this trust shall
13  continue for the benefit of my wife, if she survives me, and my children as
    provided in the Family Trust (Paragraph D). . . . . . .Except as
14  otherwise noted, I intend that the Family Trust be the amount that is
    exempt from federal estate tax and the Marital Distribution be the amount,
15  if any, needed as a marital deduction to eliminate or minimize the federal
    estate tax if my estate exceeds the amount of the Family Trust."
16                     (Exhibit 5, attached hereto, page 4)

17

18  12 (C).                    **"Section 8**
    D.  **Family Trust:**  After the distribution, if any, to my wife, the
19  Remaining trust assets shall be allocated to the Family Trust for the
    benefit of my wife, if she survives me, and my children, and be
20  administered as follows:
          1.  **Income:**  The Trustee shall pay the net income to my wife
21        at least quarterly.
          2.  **Principal:**  The Trustee shall pay to my wife and my children
22        as much of the principal as they need for support in accordance
          with the standard of support in Section 9, Paragraph 1.
23              (a)  The primary purpose of this trust is to provide support
                for my wife and education and support for my children.
24              However, the Trustee may make distributions to a child
                who has completed his or her education to enable the child
25

to enter or remain in a business, vocation or profession in which the Trustee believes the child has reasonable prospects for success, to assist the child to acquire a home, or for any similar purpose which the Trustee determines is in the child's best interest, provided that any such distributions will not jeopardize the economic security of my wife or the education of any other child. Distributions under this paragraph shall not exceed the child's presumptive share of the trust and shall be treated as advancements and charged without interest against the separate share hereafter provided for the child or his descendants.

3. **Death of Grantor's Wife:**  After my wife's death, or after my death if she does not survive me, the Family Trust shall be distributed in equal shares to my children, with the descendants of any child who is not then living to take their deceased parent's share by right of representation."

(Exhibit 5, attached hereto, page 5)

12 (D).               **"Section 9**

**Administration of Trust:**  The trust shall be subject to the following provisions:

1. **Standard of Support:**  The Trustee shall pay to or for the benefit of a trust beneficiary as much as the Trustee determines is necessary for education, medical care, and support in the beneficiary's accustomed manner of living, considering the size of the trust and any other resources known to the Trustee to be available to the beneficiary."

(Exhibit 5, attached hereto, page 5)

12 (E).               **"Section 9**

**Administration of Trust:**  The trust shall be subject to the following provisions:

4. **Confidentiality:**  I intend that this trust be confidential and, except for my wife and children, a beneficiary shall receive only information concerning that beneficiary's interest and shall have no right to other information."

(Exhibit 5, attached hereto, page 6)

12 (F).               **"Section 11**

**Responsibilities of Trustee:**  The Trustee has the duties of a trustee under Michigan law and the following responsibilities:

2. **Accounting by Trustee:** The Trustee (other than me or my wife) shall give each income beneficiary a quarterly account of the trust receipts and disbursements and the trust assets at the end of the accounting period, and, upon termination of the trust or replacement of the Trustee, a final account. Unless a beneficiary makes a written objection to the Trustee within 90 days after receiving an account, the account shall be deemed approved."

(Exhibit 5, attached hereto, page 8)

12 (G).                              **"Section 12**

**Resignation and Replacement of Trustee:** The following provisions apply to replacing a Trustee and the responsibilities of a successor Trustee:

2. **Replacement of Trustee:** Upon the death, incapacity, or resignation of a Trustee, if I have not named a successor, a Trustee shall be appointed by a majority of the income beneficiaries. An appointment shall be in writing and shall be effective when copies of the appointment and an acceptance of trust by the replacement Trustee are delivered to any then acting Trustee and all income beneficiaries. .        .        .        ."

(Exhibit 5, attached hereto, page 9)

12 (H).                              **"Section 20**

**"Governing Law:** The laws of the State of Michigan shall govern the validity, interpretation, and administration of this trust, even though the location of the trust assets or the residence of me or any beneficiary may be elsewhere."

(Exhibit 5, attached hereto, page 11)

12 (I).            **"Amendment to Trust Agreement (dated 1/26/04)**

The Trust made by SAMUEL J. RUPERT as the Grantor and Initial Trustee dated November 1, 1995, is hereby amended, pursuant to the right reserved to the Grantor by Section 5 of the Trust, as follows:

1.    After my death, incapacity or resignation as Trustee, my wife, IRENE E. RUPERT, shall become the Trustee. If she chooses not to be the Trustee, or does not survive me, or after her death, incapacity, or resignation, the first one of the following persons, in the order named, who is able and willing to act shall become the Trustee: WILLIAM RUPERT; SUSAN RUPERT BOND; or JAMES RUPERT.

2.    In all other respects the Trust is ratified and confirmed. . . ."

(Exhibit 5, attached hereto, page 14)

14

13.     The Defendants herein are represented by attorneys from the law firms of Markun

Zusman & Compton, LLP and Long & Levit, LLP.  Both law firms list their local office address

as being 465 California Street, Suite 500, San Francisco, CA 94104.

14.     The law firm of Markun Zusman & Compton, LLP also has an office located in

Portland, Oregon, at 811 Southwest Naito Parkway, Suite 420, Portland, OR 97204, which

appears to be just one floor beneath the offices of the lawyer Defendants DOWNES &

SCHULTE, who are located at 811 Southwest Naito Parkway, Suite 500, Portland, OR  97204.

15.     I have read the contemporaneously filed and served Memorandum of Points and

Authorities in Opposition to Defendants' Joint Motion to Dismiss for Lack of Personal

Jurisdiction, and know the contents to be true and correct of my own personal knowledge, to

which I could competently testify if called as a witness.  Each and every averment contained

therein, is hereby incorporated by this reference, as though fully set forth at length herein.

I declare under penalty of perjury, under the laws of the United States and the State of

California, that the foregoing is true and correct.  Executed on the 13th Day of December, 2009,

at Ben Lomond, California.

By    *William Rupert*
_____
William Rupert
Plaintiff            Pro Se

# EXHIBIT 1

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.

LEE ARONSON*
THOMAS A. BITTNER
GILE R. DOWNES
SIMON J. HARDING*
WILLIAM F. SCHULTE

MICHAEL J. FEARL
GUY E. KEATING**
ROBERT P. SCHULHOF, JR***

ATTORNEYS AT LAW
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

E-Mail: gdownes@schulte-law.com

RONALD P. ANDERSON
DONALD J. DeFRANCQ

RETIRED

*ALSO ADMITTED IN WASHINGTON
**ALSO ADMITTED IN ILLINOIS
***ALSO ADMITTED IN WASHINGTON
& ILLINOIS

June 10, 2009

## VIA EMAIL AND US POSTAL SERVICE
William Rupert
632 Crest Drive
Ben Lomond, CA 95005

      Re:    Irene E. Rupert
              Samuel R. Rupert Trust

Dear Mr. Rupert:

      I represent your mother Irene E. Rupert. She has asked me to respond in her behalf to your recent letters to her or to your sister, Susan Bond.

      I am not going to go through your many letters point by point and address your allegations, accusations and demands, or engage in a debate with you. Your mother does not agree with your allegations, accusations and demands, and is very upset with you for making them.

      To the extent they ever had any merit, a lot of your contentions are moot. Your mother is the trustee of the trust created by your father, as well as trustee of the trust she created. She has ratified and approved, in writing, all action taken with respect to either trust, either by her or by your sister. Your mother has no complaints regarding the recommendations of Ken Dillon & Associates, Inc., or regarding the changes made in trust investments since your father died.

      Your mother wants you to stop attacking your sister Susan Bond, and she wants to encourage you not to attack your brother. She wants you to stop making your allegations, accusations and demands. She wants your sister to take over as trustee of your mother's trust and, in the event your sister is unable or unwilling to perform that function in the future, she wants your brother James in Michigan to perform that function. Your mother's trust will have substantially all the family assets in it, except for less than $100,000, which is in your father's trust.

      To accomplish your mother's objectives and to encourage you to terminate your demands and attacks, your mother has done the following, among other things:

      1.    She has amended her trust to name your sister Susan Bond as trustee of her trust, and your brother James Rupert as successor trustee.

      2.    She has amended her trust to reduce your share of it by the legal and other expenses incurred in dealing with your past allegations, accusations and demands

**EXHIBIT 1**  page 1 of 2

June 10, 2009
Page 2

and in revising her estate plan, and to reduce your share further by the amount of any expenses incurred in dealing with any future demands and accusations you make.

     3.     She has amended her trust so that if, in the future, you attack or accuse your mother, your sister or your brother, or your mother's plan, you will be disinherited entirely as a beneficiary of your mother's estate and trust.

The foregoing is not a promise to you of anything by way of an inheritance from your mother. Nor is it a representation of her estate plan. Rather, I am telling you in her behalf that she has made some changes that reduce your otherwise share of her estate and trust, and that if you do not stop attacking her and her children, it is likely that you will not receive anything from her.

Our client declines to provide you with the information you have demanded regarding her affairs, or any information regarding her affairs. She does not want you involved in any way in her financial affairs. She welcomes the respectful and loving communication from you a mother should get from her son.

I will turn now to the trust created by your father, Samuel J. Rupert. Despite the document you prepared to facilitate your sister being substituted for your mother as trustee of this trust, in my opinion your mother remains the trustee of that trust. Your mother would prefer that your sister Susan Bond assume the duties of trustee of your father's trust and, in the event she becomes unable or unwilling to do so, that your brother James Rupert assume those duties. That can be arranged for by written agreement among your mother, your brother, your sister, you and other living contingent beneficiaries. I am enclosing such an agreement with a postage paid, self-addressed return envelope. Your mother has requested that I solicit your consent to this. I request that you send me this document signed and acknowledged by you so that I have it no later than Friday, June 19, 2009. If I do not have this document signed and acknowledged before a notary by you by that date, I expect that your mother will be asking me about two things: (a) additional documents for her to eliminate whatever inheritance rights from her you might otherwise have; and (b) pursuing her objectives with respect to your father's trust, in court.

                         Sincerely,

                    SCHULTE, ANDERSON, DOWNES,
                    ARONSON & BITTNER P.C.

                    Gile R. Downes

GRD:pm
Enclosures
cc: w/enc    Irene E. Rupert w/encl.
              Susan R. Bond w/encl. (via email)
              James Rupert w/encl. (via email)

**EXHIBIT 1** page 2 of 2

# EXHIBIT 2

## MODIFICATION OF TRUST
ORS 130.200(2)

EFFECTIVE DATE:             June 9, 2009

TRUST:                      Samuel J. Rupert Trust u/a/d November 1, 1995 as
                            amended by Amendment to Trust Agreement dated
                            January 26, 2004

### RECITALS

The Trust was created under Michigan law when the trustor, Samuel J. Rupert was a
resident of Michigan.  Thereafter, the trustor became a resident of the state of Oregon.

Samuel J. Rupert died October 12, 2008 in and a resident of, the state of Oregon.  The
trustee of the Trust is currently the trustor's surviving spouse, Irene E. Rupert, who is a
resident of the state of Oregon and the primary beneficiary of the Trust.  The assets of
the Trust consist of one or more investment accounts with Beacon Investment Company
or Dillon and Associates, Inc. in the state of Michigan.

### AGREEMENT

The undersigned, being all of the beneficiaries of the Trust, pursuant to the laws of the
state of Oregon and, if applicable, the laws of the state of Michigan, hereby amend the
Trust as follows.

1. **Primary Beneficiary.**  The primary beneficiary of the Trust during the lifetime
   of Irene E. Rupert, shall be Irene E. Rupert.  The Trustee may in the trustee's
   sole discretion make discretionary principal disbursements to or for the
   benefit of one or more of the children of Samuel J. Rupert, but all such
   disbursements shall be advancements against the trust share of the child to
   or for whom the disbursement is made.

2. **Trustee.**  Commencing the above Effective Date, the trustor's daughter,
   Susan R. Bond, presently of Portland, Oregon, shall be the trustee.  If Susan
   R. Bond is unable or unwilling for any reason to act in that capacity, then the
   trustee of the Trust shall be the trustor's son, James Rupert, presently of Lake
   Leelanau, Michigan.  If for any reason James Rupert is unable or unwilling to
   act in that capacity, then the trustor's daughter Susan R. Bond may appoint
   the trustee or, if she is unable or unwilling to do so, then her children,
   Christopher Bond and Patrick Bond, acting together, shall appoint the trustee,
   which may be one or both of them, or another individual or a corporate

1

**EXHIBIT 2**  page 1 of 4

trustee. Under no circumstances shall William Rupert be trustee. If Susan R. Bond is not the trustee then by notice to the trustee, Susan R. Bond may remove the trustee and appoint another individual or corporate trustee as trustee. Irene E. Rupert shall have the right, which is exercisable only by her or by Susan R. Bond as her attorney-in-fact, to remove a trustee and name herself as trustee.

3. **Estoppel.** Any individual who executes this agreement shall be estopped from asserting for any reason, that it is not enforceable in accordance with its terms.

This agreement may be executed in one or more counterparts, but shall be one and the same agreement.

EXECUTED as of the above Effective Date by the following beneficiaries:


_____          _____
Irene E. Rupert                           Susan R. Bond


_____          _____
James Rupert                              William Rupert


_____          _____
Christopher Bond, for himself and his     Patrick Bond
children Cooper Bond and Jackson Bond


_____          _____
Benjamin Rupert                           Sarah Johnson, for herself and for her
                                          children Ian Johnson, Dylan Johnson and
                                          Kyle Johnson


(Notary Blocks Begin Next Page)


2

**EXHIBIT 2** page 2 of 4

STATE OF OREGON, County of Multnomah )ss.

This instrument was acknowledged before me on _____, 2009 by Susan R. Bond.

_____
NOTARY PUBLIC FOR OREGON

STATE OF OREGON, County of Multnomah )ss.

This instrument was acknowledged before me on _____, 2009 by Irene E. Rupert.

_____
NOTARY PUBLIC FOR OREGON

STATE OF CALIFORNIA, County of _____ )ss.

Subscribed and sworn to (or affirmed) before me on this _____ day of June, 2009, by William Rupert, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

_____
Notary Public for California

STATE OF MICHIGAN, County of _____)ss.

Acknowledged by James Rupert before me on the ____ day of _____, 2009.

_____
Printed Name _____
Notary public for Michigan, County of _____
My commission expires _____

STATE OF OREGON, County of Multnomah )ss.

This instrument was acknowledged before me on _____, 2009 by Christopher Bond.

_____
NOTARY PUBLIC FOR OREGON

3

**EXHIBIT 2** page 3 of 4

STATE OF OREGON, County of Multnomah     )ss.

    This instrument was acknowledged before me on _____, 2009 by Patrick Bond.

_____
NOTARY PUBLIC FOR OREGON


STATE OF WASHINGTON          )
                             ) §
County of _____)

Signed and sworn to (or affirmed) before me this _____ day of _____, 2009 by Benjamin Rupert.

_____
NOTARY PUBLIC IN AND FOR THE
STATE OF WASHINGTON
My Appointment expires_____


STATE OF MICHIGAN        )
                         )ss.
County of _____

Acknowledged by Sarah Johnson before me on the _____ day of _____, 2009.

_____
Printed Name _____
Notary public for Michigan, County of _____
My commission expires _____

4

**EXHIBIT 2**  page 4 of 4

# EXHIBIT 3

SCHULTE, ANDERSON, DOWNES, ARONSON & BITTNER P.C.

LEE ARONSON*
THOMAS A. BITTNER
GILE R. DOWNES
SIMON J. HARDING*
WILLIAM F. SCHULTE

MICHAEL J. FEARL
GUY E. KEATING**
ROBERT P. SCHULHOF, JR***

ATTORNEYS AT LAW
811 SOUTHWEST NAITO PARKWAY, SUITE 500
PORTLAND, OREGON 97204-3379
TELEPHONE (503) 223-4131
FAX (503) 223-1346

E-Mail: gdownes@schulte-law.com

RONALD P. ANDERSON
DONALD J. DeFRANCQ

RETIRED
_____

*ALSO ADMITTED IN WASHINGTON
**ALSO ADMITTED IN ILLINOIS
***ALSO ADMITTED IN WASHINGTON
& ILLINOIS

June 19, 2009

## VIA EMAIL AND US POSTAL SERVICE

William Rupert
632 Crest Drive
Ben Lomond, CA 95005

  Re: Irene E. Rupert
     Samuel Rupert Trust

Dear Mr. Rupert:

  I have a copy of your June 11, 2009 letter to Mr. Price in Ann Arbor, Michigan. I am transmitting with this letter, a copy of my letter of this date to Mr. Price.

  Contrary to your statements in your letter to Mr. Price, your mother is trustee of the trust your father created. She is obtaining whatever assistance she determines she needs, from your sister, financial advisers and others. As I told you in my June 10 letter, your mother has amended her trust to appoint your sister as trustee of that trust. The accounting provision you refer to in your letter to Mr. Price only relates to your father's trust, and in any case does not entitle you to any accounting from my client the trustee, because you are not an income beneficiary.

  You seem to be ignoring the fact that your mother wants you to stop this. In my view, you don't have any right at this time to any of your father's estate planning paperwork (although I have asked your sister to send copies of it to you). The estate plan your mother made in 1995 and modified in 2004 is irrelevant because she has made a new one, as I told you in my June 10 letter to you.

  Again, your mother wants you to stop asking questions and making accusations. You can certainly have your own opinions regarding these matters, but she wants you to keep them to yourself, and she is hoping that you will recognize that there is nothing

**EXHIBIT 3** page 1 of 2

June 16, 2009
Page 2

to be gained and a lot to be lost by you both financially and probably more important, in terms of your family relationships, if you continue to pursue these matters.

   I respectfully suggest that you get your own independent legal counsel, stop trying to be your own lawyer, sign and return the document I sent you, and consider calling your mother and discussing with her something pleasant, but not her financial affairs or matters relating to the trust your father created.

Sincerely,

SCHULTE, ANDERSON, DOWNES,<br>ARONSON & BITTNER P.C.<br><br>Gile R. Downes

GRD:pm

cc: w/enc  Irene E. Rupert
      Susan R. Bond (via email)
      James Rupert (via email)

**EXHIBIT 3**   page 2 of 2

# EXHIBIT 4

# Will

## of

## Samuel J. Rupert

I, SAMUEL J. RUPERT, a resident of Washtenaw County, Michigan, make this my Will and revoke any prior wills.

### Section 1

**Family**: My wife is IRENE E. RUPERT. Any reference to "my wife" is to her. My children are SUSAN RUPERT BOND, WILLIAM RUPERT, and JAMES RUPERT.

### Section 2

**Debts, Taxes, and Administration Expenses**: All legally enforceable debts, funeral and administration expenses, and estate taxes on taxable estate, whether or not subject to probate, shall be paid from the residue of my estate, without reimbursement from, or apportionment among, the beneficiaries, except that my Personal Representative is authorized to request payment of taxes and expenses from the Trustee of the Trust referred to in Section 3 if my probate estate does not have funds sufficient for these purposes.

### Section 3

**Distribution of Remainder of Estate**: I give the remainder of my estate to the Trustee then acting under a Declaration of Trust executed by me today, to be administered and distributed upon the terms of that Agreement as it now exists or is later amended.

### Section 4

**Personal Representative**: I nominate my wife as Personal Representative. If she does not survive me, is incapacitated, or declines appointment, I nominate my children, SUSAN RUPERT BOND, WILLIAM RUPERT, and JAMES RUPERT, as my Personal Representatives (herein together referred to as my "Personal Representative"). My Personal Representative shall not be required to provide a bond, shall have all of the powers given by Michigan law to independent personal representatives, and shall also have the following powers:

> 1. **Sale**. To sell real or personal property without court order.

> 2. **Claims**. To settle claims made against or on behalf of my estate.

> 3. **Tax Elections**. To make tax elections appropriate for my estate planning objectives and to reduce taxes including, but not limited to, (a) electing to take

**EXHIBIT 4**, page 1 of 3

administration expenses as estate tax or income tax deductions, (b) electing to have all or a portion of any transfer for my wife's benefit qualify for the marital deduction, and (c) electing to allocate my exemption from the tax on generation-skipping transfers.

## Section 5

**Independent Probate**: I intend that my estate not be subject to supervised court administration, and I direct that independent administration be used unless circumstances which I could not anticipate require supervised court administration to protect the interests of my estate and its beneficiaries.

## Section 6

**Governing Law**: The laws of the State of Michigan shall govern the validity, interpretation, and administration of this Will, even though the location of any estate or trust property or the residence of any beneficiary may be elsewhere.

Dated: November *l*, 1995

Samuel J. Rupert

We witnessed the signing of this Will, or the Testator acknowledged to us that he signed this Will, and he appeared to be of sound mind.

Alan E. Price                         of _____ Ann Arbor, Michigan _____

Susan E. Priller                      of _____ Ann Arbor, Michigan _____

-2-

**EXHIBIT 4**, page 2 of 3

## Codicil to Will

## of

## Samuel J. Rupert

I, SAMUEL J. RUPERT, of Washtenaw County, Michigan, make this the first codicil to the Will executed by me on November 1, 1995.

1. I nominate my wife, IRENE E. RUPERT, as my Personal Representative. If she does not survive me, is incapacitated, or declines appointment, I nominate as Personal Representative the first one of the following persons, in the order named, who is able and willing to act: WILLIAM RUPERT; SUSAN RUPERT BOND; or JAMES RUPERT.

2. In all other respects, I ratify and confirm the provisions of my Will.

I sign my name to this document as the testator on January 26, 2004, and declare, under penalty of perjury under the law of the State of Michigan, that the following statements are true: this document is my will, I sign it willingly and as my voluntary act for the purposes expressed in this will, and I am 18 years of age or older, of sound mind, and under no constraint or undue influence.

Samuel J. Rupert

We sign our names to this document as witnesses on the date stated in the preceding paragraph, and declare, under penalty of perjury under the law of the State of Michigan, that the following statements are true: the individual signing this document as the testator signs it as his or her will, willingly and as his or her voluntary act for the purposes expressed in this will; each of us, in the testator's presence, signs this will as witness to the testator's signing; and, to the best of our knowledge, the testator is 18 years of age or older, of sound mind, and under no constraint or undue influence.

Sharon D. Stanley

Alan E. Price

**EXHIBIT 4**, page 3 of 3

# EXHIBIT 5

# The Samuel J. Rupert Trust

**Grantor and Trustee**:  Samuel J. Rupert

**Successor Trustee**:  Irene E. Rupert

**Alternate Successor Trustees**:   Susan Rupert Bond, William Rupert,
and James Rupert

**Dated**: November  /  , 1995

Hooper, Hathaway, Price, Beuche & Wallace
126 South Main Street
Ann Arbor, Michigan  48104

(313) 662-4426

COPY

EXHIBIT  5,  page 1  of 14

# Contents

| Section | Title | Page |
|---|---|---|
| 1 | Family ................................................................. | 1 |
| 2 | Trust Name ........................................................... | 1 |
| 3 | Purpose .............................................................. | 1 |
| 4 | Trust Assets ......................................................... | 1 |
| 5 | Rights of Grantor .................................................... | 1 |
| 6 | Successor Trustee .................................................... | 1 |
| 7 | During Grantor's Life ................................................ | 2 |
| 8 | Death of Grantor ..................................................... | 2 |
|  | A. Tangible Personal Property ........................................ | 2 |
|  | B. Distribution if Wife Survives ..................................... | 2 |
|  | C. Marital Distribution .............................................. | 2 |
|  | D. Family Trust ...................................................... | 3 |
| 9 | Administration of Trust .............................................. | 3 |
| 10 | Powers of Trustee ................................................... | 5 |
| 11 | Responsibilities of Trustee ......................................... | 6 |
| 12 | Resignation and Replacement of Trustee .............................. | 7 |
| 13 | Property in Another Jurisdiction .................................... | 8 |
| 14 | Guardians as Advisors to Trustee .................................... | 8 |
| 15 | Investment Control .................................................. | 8 |
| 16 | Life Insurance ...................................................... | 8 |
| 17 | Definitions ......................................................... | 8 |
| 18 | Certificate ......................................................... | 9 |
| 19 | Exemption from Registration ......................................... | 9 |
| 20 | Governing Law ....................................................... | 9 |
| 21 | Photocopies ......................................................... | 9 |

i

# The Samuel J. Rupert Trust

I, SAMUEL J. RUPERT, hereby create a revocable living trust of which I will be the Trustee.

## Section 1

**Family:** My wife is IRENE E. RUPERT. Any reference to "my wife" is to her. My children are SUSAN RUPERT BOND, WILLIAM RUPERT, and JAMES RUPERT. Any reference to "my children" is to them.

## Section 2

**Trust Name:** For convenience this trust may be referred to as "The Samuel J. Rupert Trust."

## Section 3

**Purpose:** This trust is to manage assets during my lifetime and administer them at my death.

## Section 4

**Trust Assets:** I may transfer assets to myself as Trustee of this trust, and designate the Trustee as beneficiary under a will, insurance policy, or other agreement. Other persons may add to the trust assets which are acceptable to the Trustee. When assets are transferred to the trust, they shall be described in Schedule A.

## Section 5

**Rights of Grantor:** I may use the income and principal of the trust for any purpose, add assets to and withdraw assets from the trust, and amend or revoke the trust at any time in writing. While I am the Trustee, I am authorized to manage the trust assets with all the authority I have over assets owned by me individually.

## Section 6

**Successor Trustee:** After my death, incapacity, or resignation as Trustee, my wife shall become the Trustee. If she chooses not to be the Trustee, or does not survive me, or after her death, incapacity or resignation, my children, SUSAN RUPERT BOND, WILLIAM RUPERT, and JAMES RUPERT, shall become the Trustees. If any of them are unwilling or unable to act as Trustee or shall resign, the remaining shall act as sole Trustee(s). "Trustee" refers to me while I am acting as Trustee and then to any successor Trustee(s).

1

**EXHIBIT 5**, page 3 of 14

## Section 7

**During Grantor's Life:** If the successor Trustee becomes Trustee during my life, the Trustee shall pay to me as much of the income and principal as I request or, if I am incapacitated, shall use for my benefit and the benefit of those dependent upon me as much of the income and principal as we need for medical care and support.

## Section 8

**Death of Grantor:** After my death, the Trustee shall pay any taxes and expenses authorized in this trust and shall administer the remaining trust assets (which will then include any life insurance or other benefits payable to this trust and any assets added to this trust by my will) as follows:

A. **Tangible Personal Property:** Signing this trust constitutes an assignment by me to this trust of all tangible personal property owned by me, such as clothing, jewelry, books, pictures, furniture, and automobiles. This property shall be distributed in accordance with any written, signed and dated instructions I may leave. Any of this property not covered by any instructions shall be distributed to my wife or, if she does not survive me, in equal shares to my children who survive me, to be divided as they agree. If the Trustee determines that it is not practical to distribute any items of tangible personal property the Trustee shall sell that property and the proceeds shall be distributed as part of the remainder of the trust.

B. **Distribution if Wife Survives:** After my death, this trust shall continue for the benefit of my wife, if she survives me, and my children as provided in the Family Trust (Paragraph D). However, if my estate exceeds the amount which would be exempt from federal estate tax, and if my wife survives me and some marital deduction is needed to eliminate the federal estate tax or reduce it to the lowest possible amount, then a distribution shall be made to my wife as provided in Paragraph C. Except as otherwise noted, I intend that the Family Trust be the amount that is exempt from federal estate tax and the Marital Distribution be the amount, if any, needed as a marital deduction to eliminate or minimize the federal estate tax if my estate exceeds the amount of the Family Trust.

C. **Marital Distribution:** If my wife survives me, the Trustee shall distribution to her the amount, if any, necessary to reduce the federal estate tax to zero (or to the lowest amount if the tax cannot be reduced to zero) after taking into consideration (a) all other items deducted on the federal estate tax return, (b) the unified credit, and (c) the credit for state death taxes to the extent that this does not increase the state death taxes, but (d) disregarding any excess retirement accumulations tax. This amount may be satisfied in cash or in specific assets, shall have a value on the date or dates of distribution equal to the amount determined by this paragraph, and shall be satisfied only with assets which qualify for the marital deduction. The assets transferred to my wife shall not be liable for the payment of any estate taxes.

2

**EXHIBIT 5**, page 4 of 14

**D. Family Trust:** After the distribution, if any, to my wife, the remaining trust assets shall be allocated to the Family Trust for the benefit of my wife, if she survives me, and my children, and be administered as follows:

1. **Income:** The Trustee shall pay the net income to my wife at least quarterly.

2. **Principal:** The Trustee shall pay to my wife and my children as much of the principal as they need for support in accordance with the standard of support in Section 9, Paragraph 1.

(a) The primary purpose of this trust is to provide support for my wife and education and support for my children. However, the Trustee may make distributions to a child who has completed his or her education to enable the child to enter or remain in a business, vocation or profession in which the Trustee believes the child has reasonable prospects for success, to assist the child to acquire a home, or for any similar purpose which the Trustee determines is in the child's best interest, provided that any such distributions will not jeopardize the economic security of my wife or the education of any other child. Distributions under this paragraph shall not exceed the child's presumptive share of the trust and shall be treated as advancements and charged without interest against the separate share hereafter provided for the child or his or her descendants.

3. **Death of Grantor's Wife:** After my wife's death, or after my death if she does not survive me, the Family Trust shall be distributed in equal shares to my children, with the descendants of any child who is not then living to take their deceased parent's share by right of representation.

4. **Alternative Beneficiaries:** If all of the foregoing beneficiaries die before all trust assets are distributed, the trust shall terminate and the remaining trust assets shall be distributed one-half to my heirs and one-half to my wife's heirs.

## Section 9

**Administration of Trust:** The trust shall be subject to the following provisions:

1. **Standard of Support:** The Trustee shall pay to or for the benefit of a trust beneficiary as much as the Trustee determines is necessary for education, medical care, and support in the beneficiary's accustomed manner of living, considering the size of the trust and any other resources known to the Trustee to be available to the beneficiary.

2. **Contingent Trust:** If any share of the trust is to be distributed to a person who has not reached the age of 25 for whom a trust is not otherwise provided in the preceding section, the Trustee shall retain the assets in trust for the beneficiary and pay to the beneficiary as much of the income and principal as the beneficiary needs for support. When the beneficiary reaches age 25, the Trustee shall distribute the remaining trust assets to the beneficiary or, if he or she dies before age 25, to his or her estate.

3

3. **Manner of Payment:** Any payments to a person who is a minor, or not legally competent, or unable to properly manage assets because of illness or mental or physical disability, may be paid in any of the following ways that the Trustee determines advisable: directly to the beneficiary, to a guardian or conservator of the beneficiary, to a custodian for the beneficiary under a Uniform Gifts to Minors Act or Uniform Transfers to Minors Act, to the person responsible for the care of the beneficiary, or by the Trustee making direct expenditures for the beneficiary's support.

4. **Confidentiality:** I intend that this trust be confidential and, except for my wife and children, a beneficiary shall receive only information concerning that beneficiary's interest and shall have no right to other information.

5. **Existing Trusts:** If a share of the trust becomes distributable to a beneficiary for whom a separate trust is being administered, the share shall be added to that trust.

6. **Similar Trusts:** If the Trustee is holding trusts created by me or a member of my family, with the same beneficiaries and substantially the same terms, they may be consolidated and administered as a single trust.

7. **Termination of Small Trusts:** If a trust is reduced to an amount which the Trustee decides would not be economical to continue, the Trustee shall distribute the trust assets to the income beneficiary or income beneficiaries in proportion to their interests, and the trust shall terminate.

8. **Interests Not Available to Creditors:** No income or principal payable to a beneficiary may be assigned or pledged as security for any debt or be subject to liabilities or creditor claims prior to actual receipt by the beneficiary.

9. **Rule Against Perpetuities:** No trust shall continue beyond the last to occur of (a) 21 years after the death of the last to die of the beneficiaries who were living at my death, or (b) if longer and permitted by applicable law, 90 years after the date of my death. At that time, any remaining trust shall terminate and the assets distributed to the income beneficiary or beneficiaries in proportion to their interests.

10. **Debts, Taxes, and Administration Expenses:** At the request of my Personal Representative, or if I have no probate estate, the Trustee shall pay (but not using any asset which would otherwise be exempt from estate tax) all legally enforceable debts (except mortgages on real property), funeral and administration expenses, and estate taxes excluding (a) any generation-skipping tax on any "taxable termination" or "taxable distribution," (b) any additional estate tax on special valuation farm or business real estate, or (c) any tax resulting from the inclusion in my estate of assets for which a marital deduction was previously allowed. The Trustee is also authorized to purchase assets from, and loan money to, my estate (whether or not the Trustee is also the Personal Representative) if advisable to protect assets of my estate.

4

11. **Survivorship:** If my wife and I die and it cannot be determined which of us survived, my wife shall be considered to have survived me. If my wife survives me but does not live for six months after my death, the amount, if any, distributed to my wife shall be reduced to the amount which will result in our estates being taxed in the same marginal federal estate tax brackets, determined as if she had died immediately after me and her estate were valued as of the date, and in the manner in which my estate is valued for federal estate tax purposes.

## Section 10

**Powers of Trustee:** The Trustee has the powers of a trustee under Michigan law and the following powers:

1. **Retain Assets:** Retain assets received from me without regard to diversification, risk or suitability as a trust investment.

2. **Sell:** Sell, lease and mortgage real or personal property.

3. **Invest:** Invest in any real or personal property, including common trust funds and investment companies (including entities for which the Trustee or an affiliate acts as advisor or in another legally permissible capacity and receives renumeration). While I am Trustee I may make short sales, maintain a margin account, and pledge securities as security for margin account loans.

4. **Income:** Make reasonable allocations of receipts and disbursements between principal and income, and add to principal income of a trust which is not distributed in any tax year.

5. **Distribute Assets:** Distribute assets or sell assets and distribute the proceeds, determine the value of assets distributed, and make disproportionate allocations of assets.

6. **Tax Elections:** Make tax elections in the best interest of my estate, the trust, and its beneficiaries as a whole, without apportioning the benefits among beneficiaries, including electing to take expenses as estate tax or income tax deductions, electing to allocate the generation-skipping tax exemption, and electing to have all or a portion of any transfer for my wife qualify for the marital deduction.

7. **Continue Business:** Continue any business I own, until it is sold or distribution of the trust has been completed.

8. **Title to Assets:** Hold title to trust assets in the Trustee's name without designation of fiduciary capacity.

9. **Employ Agents:** Employ agents to perform any act of administration, whether or not discretionary, including attorneys, accountants, investment managers, or other advisors.

5

**EXHIBIT 5**, page 7 of 14

10. **General:** In general, exercise all powers in the management of the trust that any individual could exercise in the management of similar assets, and take any action that my be appropriate to carry out the purposes of the trust.

11. **Limitations:** The Trustee shall have no power or discretion which would result in trust assets being included for tax purposes in the Trustee's estate or trust income taxed to the Trustee (unless inclusion or taxation would occur regardless of the power or discretion). In particular, no Trustee shall have the power to distribute trust assets in satisfaction of a legal obligation of the Trustee personally, including the obligation to support a minor child, or make distributions to benefit the Trustee personally. This limitation shall not apply to any provisions I have made for distributions to or for the benefit of the Trustee personally which are limited by an ascertainable standard relating to health, education or support.

12. **Authority of Successor Trustee:** Anyone dealing with a successor Trustee shall rely on the successor Trustee's statement that it is the Trustee and no further evidence of authority shall be required. No person who transfers an asset to the Trustee need inquire into the provisions of the trust or be concerned with the disposition of the assets, and the receipt of the Trustee shall release the transferor and be binding on every beneficiary.

### Section 11

**Responsibilities of Trustee:** The Trustee has the duties of a trustee under Michigan law and the following responsibilities:

1. **Accounting by Grantor:** The Trustee which succeeds directly from me shall accept the trust without any accounting and it shall be conclusively presumed that I acted properly in administering the trust.

2. **Accounting by Trustee:** The Trustee (other than me or my wife) shall give each income beneficiary a quarterly account of the trust receipts and disbursements and the trust assets at the end of the accounting period, and, upon termination of the trust or replacement of the Trustee, a final account. Unless a beneficiary makes a written objection to the Trustee within 90 days after receiving an account, the account shall be deemed approved.

3. **Trustee's Compensation:** The Trustee shall receive reasonable compensation in accordance with the charges made for similar services by corporate fiduciaries in the community, and shall be reimbursed for expenses incurred in acting as Trustee. An individual Trustee may waive compensation, but this is not a request by me that any Trustee do so.

4. **Successor Trustee's Responsibilities:** A successor Trustee shall be entitled to rely on the records of the predecessor Trustee as to the assets of the trust and shall not be liable for the actions of the predecessor Trustee or be responsible for the trust assets until they are in the possession of the successor Trustee. A successor Trustee's

6

**EXHIBIT 5**, page 8 of 14

responsibility to locate trust assets shall be the same degree of responsibility the Personal Representative of my estate has for estate assets. Until a successor Trustee receives notice of the death, incapacity, or resignation of the predecessor Trustee, and has accepted the duties of Trustee, the successor Trustee shall have no responsibility and shall incur no liability.

     **5. Corporate Trustee Custody of Assets:** If a corporate Trustee is acting, it shall have custody of the trust assets, and make collections, payments, and distributions, and no individual Trustee shall be liable for the corporate Trustee's action. An individual Trustee may delegate his or her authority to the corporate Trustee and terminate the delegation at any time by written notice to the corporate Trustee.

     **6. Environmental Conditions:** The Trustee may require, as a prerequisite to accepting real property, evidence satisfactory to the Trustee that (a) the property is not contaminated by any hazardous or toxic substances, and (b) the property has not been used for the generation, use, storage, or discharge of any hazardous or toxic substances. The Trustee shall not be liable for any loss or depreciation in value from retaining property upon which there is later discovered to be substances requiring remedial action pursuant to any federal, state, or local environmental law, unless the Trustee contributed to the loss or depreciation in value through willful default, willful misconduct, or gross negligence.

### Section 12

     **Resignation and Replacement of Trustee:** The following provisions apply to replacing a Trustee and the responsibilities of a successor Trustee:

     **1. Resignation of Trustee:** A Trustee may resign by written notice to me or, after my death, to all income beneficiaries and the successor Trustee. If there is a corporate Trustee, it shall resign at the request of all income beneficiaries, which request may be made for any of the following reasons: desire to change the situs of the trust to another state in which a majority of the beneficiaries reside, a difference in investment objections which cannot be resolved by agreement, investment performance which is for any period of one year or more not reasonably comparable to that of other corporate fiduciaries in the community, or trustee's fees which are not reasonably comparable to those of other corporate fiduciaries in the community. However, no beneficiary shall have the power to request a Trustee to resign if the exercise of the power would result in the trust assets being included for tax purposes in the beneficiary's estate (unless such inclusion would occur regardless of the power).

     **2. Replacement of Trustee:** Upon the death, incapacity, or resignation of a Trustee, if I have not named a successor, a Trustee shall be appointed by a majority of the income beneficiaries. An appointment shall be in writing and shall be effective when copies of the appointment and an acceptance of trust by the replacement Trustee are delivered to any then acting Trustee and all income beneficiaries. If no replacement is appointed within 60 days, any remaining Trustee, a resigning Trustee, or any interested party make seek the appointment of a replacement by the court having jurisdiction

**EXHIBIT 5,** page 9 of 14

of the trust. A replacement for a corporate Trustee shall be a corporation authorized to administer trusts. A resigning Trustee shall act until the successor Trustee accepts and the trust assets are transferred. A majority of the income beneficiaries may approve the account of, and the release and discharge of, the resigning Trustee.

## Section 13

**Property in Another Jurisdiction:** If the trust includes property located in a jurisdiction in which the Trustee is not able to act, the Trustee may appoint an individual or entity able to act there as an additional Trustee with the authority to sell, mortgage, or otherwise administer the property and deliver the proceeds to the Trustee.

## Section 14

**Guardians as Advisors to Trustee:** If a beneficiary is a minor, the persons who are the Guardians of the beneficiary shall act as advisors to the Trustee concerning the circumstances and needs of the beneficiary. The Trustee shall consult with the advisors concerning discretionary payments to the beneficiary, but the Trustee shall have the sole discretion and authority to administer the trust.

## Section 15

**Investment Control:** If I am not acting as Trustee during my lifetime because I have resigned, the Trustee shall consult with me concerning investments, and I reserve the right to direct the Trustee to sell, purchase, invest, or retain trust assets. The Trustee shall not be liable for any loss resulting to the trust or any beneficiary from action taken at my direction. This section shall not apply if I am, in the written opinion of my personal physician, incapable of making or communicating informed decisions.

## Section 16

**Life Insurance:** I may name the Trustee as the beneficiary of life insurance policies on my life, but I reserve all rights of ownership of the policies. No insurance company whose policy is payable to the Trustee need inquire into the provisions of the trust or the disposition of the policy proceeds, and the receipt of the Trustee shall release the insurer and be binding on every beneficiary.

## Section 17

**Definitions:** As used in this trust:

1. "Spouse" or "wife" means the person then living to whom I am legally married at the time the term requires definition and, after my death, the person then living to whom I was legally married at my death.

2. "Descendants" means children, grandchildren, and their descendants and includes any adopted person.

8

EXHIBIT 5, page 10 of 14

3. "By right of representation" means that property is divided into as many equal shares as there are living descendants in the nearest degree of kinship and deceased persons in that same degree of kinship who left living descendants. Each living descendant in the nearest degree receives one share. The share of each deceased descendant in that same degree is divided among his or her descendants in the same manner.

4. "Incapacity" of a person to act as Trustee shall be determined by a court having jurisdiction of such matters or as certified by the written opinion of the person's personal physician, or a physician who has examined the person for this purpose, that the person is physically or mentally incapable of carrying out his or her responsibilities as Trustee. A person who has ceased to act as Trustee because of incapacity may resume acting as Trustee upon similar certification that he or she has recovered from incapacity.

5. The "anti-lapse" statute shall not apply to a gift conditioned on survival if no substitute beneficiary is specified.

6. A divorce shall revoke any provision for the former spouse, unless specifically provided otherwise.

## Section 18

**Certificate:** The Trustee may record or file with any clerk, register of deeds, or transfer agent, or any person dealing with the Trustee, a certificate, signed and acknowledged by me or the Trustee, containing certain provisions of this trust. Any person dealing with the Trustee may rely on the certificate as a full statement of the provisions which are pertinent to the particular transaction. Photocopies of the executed certificate shall have for all purposes the same effect and authority as the original.

## Section 19

**Exemption from Registration:** This trust shall be exempt from registration under the Michigan Revised Probate Code, or any similar law. I intend that the administration of this trust not be subject to supervised court administration.

## Section 20

**Governing Law:** The laws of the State of Michigan shall govern the validity, interpretation, and administration of this trust, even though the location of the trust assets or the residence of me or any beneficiary may be elsewhere.

## Section 21

**Photocopies:** Photocopies of this signed trust shall have for all purposes the same effect and authority as the original.

9

Dated: November / , 1995

Witnesses:                                    Grantor and Trustee:

_____                    _____
Alan E. Price                                Samuel J. Rupert

_____
Susan E. Priller

       Acknowledged before me in Washtenaw County, Michigan on
November / , 1995, by SAMUEL J. RUPERT.

          _____
          Susan E. Priller
          Notary Public, Washtenaw        County, MI
          My commission expires: 5/5/99

10

**EXHIBIT 5**, page 12 of 14

## Schedule A

The following assets (bank accounts, certificates of deposit, securities, real estate, etc.) have been transferred to "SAMUEL J. RUPERT, Trustee under agreement dated November  /  , 1995."

The following life insurance policies or other death benefits have been made payable to "IRENE E. RUPERT, Trustee of the SAMUEL J. RUPERT Trust dated November  /  , 1995."

| Policy Number | Insurance Company | Insured | Amount of Policy |
|---|---|---|---|

11

**EXHIBIT 5,** page 13 of 14

## Amendment to Trust Agreement

The Trust made by SAMUEL J. RUPERT as the Grantor and Initial Trustee dated November 1, 1995, is hereby amended, pursuant to the right reserved to the Grantor by Section 5 of the Trust, as follows:

1. After my death, incapacity or resignation as Trustee, my wife, IRENE E. RUPERT, shall become the Trustee. If she chooses not to be the Trustee, or does not survive me, or after her death, incapacity, or resignation, the first one of the following persons, in the order named, who is able and willing to act shall become the Trustee: WILLIAM RUPERT; SUSAN RUPERT BOND; or JAMES RUPERT.

2. In all other respects the Trust is ratified and confirmed.

3. Photocopies of this amendment shall have for all purposes the same effect and authority of the signed original.

Dated: January 26 , 2004

Witnesses:

Sharon L. Stanley

Alan E. Price

Grantor:

Samuel J. Rupert

Acknowledged before me in Washtenaw County, Michigan on January 26, 2004, by SAMUEL J. RUPERT.

Sharon L. Stanley
Notary Public, Livingston   County, MI **
My commission expires:  8/31/04
**acting in Washtenaw County

**EXHIBIT 5,**  page 14  of 14

**PROOF OF SERVICE BY MAIL**
**William T. Rupert v. Susan Bond et al.,**
**Case No. 5:09-cv-02758 JF (RS)**

I, the undersigned, state that I am a citizen of the United States and a resident of the

County of Santa Cruz, State of California; that I am over the age of eighteen years and not a

party to the above-entitled action; that my business and mailing address is P.O. Box 66403,

Scotts Valley, CA 96067-6403.

On **December 15, 2009,** I served true and correct copies of the following:

**DECLARATION OF WILLIAM RUPERT IN OPPOSITION TO**
**DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION; & EXHIBITS #1-#5**

on the persons and/or entities

listed below, by placing said copies enclosed in a sealed envelope with postage thereon fully

prepaid, in the United States Post Office at Santa Cruz, California, addressed as follows:

LONG & LEVIT LLP
ATTN: JESSICA R. MACGREGOR
465 California Street, Suite 500
San Francisco, CA 94104

MARKUN ZUSMAN & COMPTON, LLP
ATTN: KEVIN K. ENG
465 California Street, Suite 500
San Francisco, CA 94104

I declare under penalty of perjury that the foregoing is true and correct. Executed on the

15th Day of December, 2009, at Ben Lomond, California.

Carol Slater
_____
Carol Slater