1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 9/9/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| WILLIAM T. RUPERT,<br><br>               Plaintiff,<br><br>     v.<br><br>SUSAN BOND, et al.,<br><br>               Defendants. | Case Number C 09-2758 JF (HRL)<br><br>ORDER[1] GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION<br><br>[Re: Doc. No. 14 ] |

     Defendants move to dismiss the instant action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  The Court has considered the moving and responding papers and the oral argument presented at the hearing.  For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

     This case arises out of a dispute between two of three adult siblings regarding control of their parents' assets following the death of their father.  Plaintiff William Rupert ("William"), proceeding *pro se*, alleges the following facts in the operative first amended complaint ("FAC"):

---

[1]    This disposition is not designated for publication in the official reports.

1    Samuel Rupert (now deceased) and his wife Irene Rupert ("Irene") lived in Michigan for

2  many years.  On November 1, 1995, they had estate plans prepared by Alan Price ("Price"), a

3  Michigan attorney.  The estate plans included revocable trusts.  Under the terms of the trusts,

4  Samuel and Irene were to serve as their own trustees; upon the death of either, the assets of both

5  trusts would be allocated to a Family Trust for the benefit of the surviving spouse and the three

6  children:  oldest child Susan Bond ("Bond"), middle child William, and third child James Rupert

7  ("James").   The surviving spouse was to receive all net income from the investment assets of

8  the Family Trust until death, at which point the three children would become the successor

9  beneficiaries entitled to equal distributions of all remaining assets of the Family Trust.  If a time

10  came when the surviving parent could not manage his or her affairs, the three children were to be

11  co-successor trustees.

12    On January 26, 2004, Samuel and Irene asked Price to modify their estate plans to

13  designate William as the first nominated child to succeed them as both successor trustee and

14  personal representative/executor.  William lives near Santa Cruz, California.  Samuel sent

15  William copies of some of the estate documents; William did not examine the documents

16  closely, but put them in a file cabinet.

17    Samuel and Irene subsequently moved to Oregon, near Portland, to be near Susan and her

18  husband.  In May 2008, Samuel and Irene signed powers of attorney making Susan their health

19  care agent and attorney-in-fact for non-trust assets.  William did not know about these

20  documents.

21    Samuel died on October 12, 2008 after falling in the shower and hitting his head.  Susan

22  immediately took over managing all of Irene's personal and financial affairs.  She misled

23  William as to the scope of her authority; William had not examined the documents Samuel had

24  sent him in 2004, and thus did not realize that the estate planning documents included the trust

25  provisions or that he was the first nominated child to succeed Irene as trustee.  When William

26  told Susan that he had estate planning documents from 2004, Susan told him that she had

27  superseding documents putting her in charge.  William believed her and did not press the matter

28  at that time.

Case No. C 09-2758 JF (HRL)
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
(JFLC2)

1   Irene had her ninetieth birthday in January 2009.  William attended a surprise party for

2   Irene in Oregon, organized by Susan.  At that time, Susan told William that she was removing a

3   high-yield bond portfolio from the management of a Michigan investment firm hired by their

4   parents and giving it over to management by her close friend Kenny Dillon.  The parents had

5   hired Dillon in the past but had fired him because his investments did not yield enough money, at

6   which point the parents had hired the Michigan firm.

7   Over the next few months, William and Susan had several disputes about who should be

8   in charge of Irene's finances.  Meanwhile, Irene was calling William, complaining that Susan

9   was not nice to her and was keeping her in the dark regarding her (Irene's) finances.  Susan made

10  several comments about how she did not like Irene.  Irene's mental faculties were deteriorating,

11  and ultimately she was diagnosed with Alzheimer's.  Irene told William that when she called

12  Susan, Susan's husband Bob would not put Susan on the phone and told Irene to talk to the staff

13  at her assisted living facility instead of bothering Susan.  At some point Irene told William that

14  Susan had sold the high-yield bond portfolio (discussed above) at a loss.  William started asking

15  Susan for an accounting of assets.

16  At that point, in May 2009, William located the legal documents he'd received in 2004.

17  He realized for the first time that the estate plan included the living trusts and that he was first

18  nominated successor trustee.  William sent numerous letters to Susan accusing her of misconduct

19  and asking her to document her legal authority.  In June 2009, William received a letter from

20  Irene stating that he had antagonized the whole family and that if he did not stop sending letters

21  she would cut him out of her will.  Shortly thereafter, William received a letter from Gile

22  Downes ("Downes") of Schulte, Anderson, Downes, Aronson & Bittner, PC, an Oregon law firm

23  purporting to represent Irene.  Downes stated that William's prospective inheritance rights had

24  been reduced and that he had been replaced as successor trustee of all of the trusts; that Susan

25  was the successor trustee; that William's prospective inheritance rights would be reduced further

26  if he persisted in writing letters and seeking information; and that William's prospective

27  inheritance rights would be eliminated completely unless William signed an enclosed

28  modification of trust agreement by June 19, 2009.

3

1    William filed the instant lawsuit on June 22, 2009, and filed the operative FAC on July

2    23, 2009.  He names Susan, Irene, Downes, and Downes' law firm as Defendants, asserting

3    claims for:  (1) intentional interference with economic relations (prospective inheritance and lost

4    successor trustee compensation); (2) conspiracy to interfere with economic relations by replacing

5    William as successor trustee and beneficiary, and by looting the Family Trust; (3) punitive

6    damages; and (4) declaratory relief.

7                                                       **II. DISCUSSION**

8    Because no federal statute governs personal jurisdiction, this Court applies the law of the

9    forum state.  *See Love v. Associated Newspapers*, 611 F.3d 601, 608-09 (9th Cir. 2010).

10   California's long-arm statute is co-extensive with federal standards; thus this Court may exercise

11   personal jurisdiction if doing so comports with federal constitutional due process.  *Id*. at 609.

12   "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must

13   have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction

14   'does not offend traditional notions of fair play and substantial justice.'"  *Schwarzenegger v.*

15   *Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *International Shoe Co. v.*

16   *Washington*, 326 U.S. 310, 316 (1945)).

17   "There are two forms of personal jurisdiction that a forum state may exercise over a

18   nonresident defendant – general jurisdiction and specific jurisdiction."  *Boschetto v. Hansing*,

19   539 F.3d 1011, 1016 (9th Cir. 2008).  William concedes that none of the defendants has property

20   interests in California, does business in California or has the kind of regular contacts with

21   California sufficient to give rise to general personal jurisdiction.  However, William contends

22   that Defendants' conspiracy to deprive him of significant economic benefit (inheritance and

23   trustee compensation), combined with Defendants' written and telephonic communications to

24   him in California in furtherance of that conspiracy, are sufficient to give rise to specific personal

25   jurisdiction over Defendants.

26   The Ninth Circuit has articulated a three-prong test for analyzing specific jurisdiction:

27   (1) The non-resident defendant must purposefully direct his activities or
     consummate some transaction with the forum or resident thereof; or perform some
28   act by which he purposefully avails himself of the privilege of conducting

4

Case No. C 09-2758 JF (HRL)
ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
(JFLC2)

1    activities in the forum, thereby invoking the benefits and protections of its laws;

2    (2) the claim must be one which arises out of or relates to the defendant's forum-
     related activities; and
3

4    (3) the exercise of jurisdiction must comport with fair play and substantial justice,
     i.e. it must be reasonable.

5    *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.

6    2006) (quoting *Schwarzenegger*, 374 F.3d at 802).

7        The first prong, sometimes referred to as the "purposeful availment" prong, "may be

8    satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful

9    direction of activities at the forum; or by some combination thereof." *Id*. "Purposeful

10   availment" is treated differently in tort and contract cases. *Id*. In tort cases, the court inquires

11   "whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an

12   'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not

13   the actions themselves occurred within the forum." *Id*. (quoting *Schwarzenegger*, 374 F.3d at

14   803). In civil cases, the court inquires "whether a defendant 'purposefully avails itself of the

15   privilege of conducting activities" or "consummate[s] [a] transaction" in the forum, focusing on

16   activities such as delivering goods or executing a contract. *Id*. (quoting *Schwarzenegger*, 374

17   F.3d at 802).

18       Because this is a tort case, the Court applies the "effects" test. "The effects test is

19   satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the

20   forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the

21   forum state." *Love*, 611 F.3d at 609. "Where a defendant's 'express aim was local,' the fact that

22   it caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff

23   lived in the forum state, is insufficient to satisfy the effects test." *Id*. (quoting *Schwarzenegger*,

24   374 F.3d at 807).

25       Here, Defendants did communicate with William, who resides in California. However,

26   the communications concerned the estate planning decisions of Irene, an Oregon resident.

27   Susan's alleged mistreatment of Irene and alleged mismanagement of trust funds occurred in

28   Oregon. Downes and the members of his law firm are Oregon attorneys; their communications

                                                5

1   with William related solely to their representation of Irene under Oregon law.  None of

2   Defendants' alleged conduct has any nexus with California other than the fact that William

3   happens to reside in California.  Under these circumstances, the Court concludes that the

4   "effects" test is not satisfied, and that it would be unreasonable for it to exercise personal

5   jurisdiction over Defendants.

6                                    **III. ORDER**

7        (1)     Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED; and

8        (2)     The Clerk of the Court shall close the file.

9

10

11

12

13   DATED:  9/9/2010

14

15                                             _____
                                               JEREMY FOGEL
                                               United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

6

1   A copy of this Order was served upon the following persons:

2

3   Jessica R. MacGregor jmacgregor@longlevit.com, lmyers@longlevit.com

4   Kevin K. Eng keng@mzclaw.com

5   William T. Rupert emfwtr@comcast.net

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7